## Stafford v. Stafford.

Oct. 17, 1941.

F. P. Keese for appellant.

Jean L. Auxier for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The matter before us involves the custody of two infant daughters of the parties above named. On November 27, 1940, the chancellor in a proceeding which involved the one question, awarded custody to the mother. Later, appellant filed in this court copies of judgment and supersedeas bond. Shortly thereafter, appellee filed copy of the record and moved for a discharge of the bond. We sustained this motion under authority of Casebolt v. Casebolt, 170 Ky. 88, 185 S. W. 510, construing Section 2123, Kentucky Statutes. Thereafter, when too late under Sections 738, 739, Civil Code for appellant to complete the record in conformity, appellee moved to dismiss. Civil Code, Section 740. Carey-Reed Construction Co. v. Hart, 238 Ky. 391, 38 S. W. (2d) 261. This motion was sustained.

Appellant did not contest the foregoing motions, but later filed a completed record in our clerk's office and was granted appeal. Up to the date of submission appellant has not filed any brief. Nor is he contesting motion to discharge the current supersedeas, which motion was passed to the merits of the case. There is no motion to dismiss appeal; appellee is insisting on a decision on merits.

The parties were married in Mingo County, West Virginia, August 28, 1938. Following marriage they lived in a home furnished them by appellee's father, and were living there when the twin girls were born in May, 1939. There is little showing of disagreement until after the birth of the children; the break came about May 1, 1940, when appellant became enraged because the mother would not take the children to the field and leave them in a box while she assisted him in his work. It is not necessary to relate matters arising, which apparently made it impossible for appellee to continue to live with appellant in peace or comfort. About the time of separation appellee, with the children, went to her father's home, where she has since resided.

Soon after separation appellant returned to his father's home in Pike County, where he has since resided. About September 16, 1940, while the mother was at church, and the children at her father's home, appellant, under some pretext, got possession of them and took them to his father's home in Kentucky.

In order to reach the proceedings had in the Pike circuit court it is proper to relate proceedings in the court of West Virginia. There appears in the record a judgment of that court, (Oct. 9, 1940) so certified under the law as to establish authenticity, granting divorce to appellee and giving her custody of the children. That judgment was rendered after the date when appellant took the children to his father's home. The record is silent as to when the proceeding was begun. On October 16, 1940, appellee filed a petition in the Pike circuit court seeking custody of the children. No other relief was sought. After a hearing of proof, the court awarded appellee custody, and from this judgment appeal is taken, without any showing by appellant why and upon what grounds the judgment should be reversed.

It is suggested by appellee that appellant contended that the Pike circuit court did not have jurisdiction of the subject matter involved, taking the position that the West Virginia court alone can determine the question of custody, a matter therefore determined by that court, whose orders appellant has violated. The question suggested does not appear to have been presented in the court below, either by special demurrer or in answer.

There is no attack on the West Virginia judgment. Had it been properly raised we are of the opinion that such an objection would be without merit, since in Workman v. Workman, 191 Ky. 124, 229 S. W. 379, 380, we said on discussion of the same question:

"No consideration short of a statutory inhibition will interfere with the power of a chancellor to adjudge the custody of an infant to whomsoever it might appear the welfare and happiness of the infant demand, whether that person be a resident or nonresident of this state."

Furthermore, in accord with our decision in Glanton v. Renner, 285 Ky. 808, 809, 149 S. W. (2d) 748, appellee's suit might well have been maintained in Kentucky upon the unattacked judgment, even to the extent of a contempt proceeding.

In pleadings the right of the one or the other of the parties to custody, was raised by cross allegations that neither was a proper person to have custody. Without going into a resume of the proof on this point, the chancellor may well have concluded that from a strictly moral standpoint the father alone would hardly be the proper custodian. There is not a word of proof that would indicate that the mother in this respect was unfit to care for them in a proper manner. Neither of the two is shown to be so financially situated as to furnish the children the necessities or comforts of life, though the father, perhaps, has the advantages on this score. Under the proof neither is undertaking the task. The appellant lives in Pike County with his father and mother, and they are taking care of the children; they are shown to be most estimable citizens. While not people of wealth, they are shown to be able to take care of the needs of the two girls, and express willingness to continue.

The mother, apparently of good repute, is living with her parents, shown to be Christian people of splendid reputation, also ready and willing to assist the daughter and to give her and the children a comfortable home. The grandfather is not to be classed as one abounding in riches, but as the proof goes, although he has a large family, it may be readily gathered that he and his wife would not permit the daughter or the grandchildren to suffer for want of necessities. If later

on it should develop that the children were neglected or suffering, the chancellor may be called upon to use his vested power to remedy the situation. As we view the phase of the controversy, as between the two sets of grandparents, and their ability and willingness to provide for and properly rear the children, there may be said to be a fair balancing of the scales.

But there is in cases of this character another element of persuasive influence. Here there were two girls of tender age. According to natural rules, unless the mother is shown to be unfit for the purpose, she should have their care, and other things being equal they are entitled to have the mother's care.

> "Equity will place the custody of the infant ward where its future welfare demands. * * * And in determining who shall have the custody of the infant, its welfare is of paramount concern. Equity always has in view the welfare of a child of tender years in decreeing its custody to one claimant against another. The breaking up of an established, beneficial, and natural relationship, where same exists, is an important factor to be considered in determining the right to its custody." Fletcher v. Lippert's Guardian, 251 Ky. 469, 65 S. W. (2d) 450, 451.

While ordinarily the father is treated as the natural guardian of infant children, under our statutes the court should always determine the custody as appears most beneficial to the child, and in a great number of cases we have held that children of tender age should be given to the mother, unless there be insuperable obstacles. Masterson v. Masterson, 46 S. W. 20, 20 Ky. Law Rep. 631; Caudill v. Caudill, 172 Ky. 460, 189 S. W. 431; Evans v. Evans, 232 Ky. 155, 22 S. W. (2d) 578.

Here the proof shows that the father evinced no interest in the children from the time of birth until the separation, nor thereafter until he brought them to Kentucky, which date, as counsel for appellee points out, was five days after the passage by Congress of the Selective Training and Service Act, 1940, 50 U. S. C. A. Appendix, Section 301 et seq. His testimony shows that from the date of separation, he showed not enough interest to visit them, and it is extremely doubtful if he undertook to provide for them to any substantial degree.

His entire conduct throughout the whole time convinces us that as between father and mother, the latter with the assistance of her parents, is at the present time best suited for the care of these children, and we can readily perceive how the chancellor so determined, admitting that other elements relating to their welfare were fairly well balanced. Our conclusion obviates the necessity of passing on motion to discharge the current supersedeas bond.

Judgment affirmed.