## Lambeth v. Lambeth.

May 13, 1947.

Rehearing denied June 20, 1947.

Wm. J. Baxter, Judge.

Beverly White for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

In January of 1946 appellant sought absolute divorce from appellee on grounds of cruel and inhuman treatment, such conduct on his part as to indicate an outrageous temper, and to endanger her if they remained together. Of the marriage, September 1934, one girl child was born, she being about eleven at the time of suit. Appellant asks for her custody; for alimony in a lump sum of $500, and an allowance of $60 per month pendente and permanently for her and the girl's support.

Defendant answered in denial, and on cross petition alleged cruel and inhuman treatment; that he and not the wife was the proper person to have custody of the child. The wife had asked and was granted an order

restraining the husband from molesting her, and attachment and garnishment. During pendency an agreed order was entered under which the husband was to pay $10 per week for support of the child. The temporary restraining order, and the garnishment, were dissolved and discharged.

Thereafter another agreed order gave custody of the child to the mother, with week end custody to the father. The order recited: "It is further ordered by the court that in the event the plaintiff desires to change her residence out of the State of Kentucky, or shall remarry, either party may bring the question of care, custody and control of the child before this court for further adjudication." The order also recites: "On motion of plaintiff it is ordered that she shall take nothing on her prayer relative to alimony, costs or attorneys' fees." Restoration of property which either party received from the other, during marriage or by reason thereof, was directed.

Proof was taken, the husband not taking any depositions. On submission the chancellor (April 5, 1946) granted appellant absolute divorce, and made the agreed orders a part of the judgment, but in this order restrained appellee from "coming about plaintiff or her home, or threatening, annoying, frightening or injuring her in any manner whatever." The case was retained on the docket for further orders relative to the custody or maintenance of the child, and enforcement of the injunction.

The matter before us arose on a motion made by appellant about six months after the judgment, asking absolute custody of the child and permission to make their home in Mississippi. Appellee in response stated that he was an employee of the Western Union Company at Lexington, Kentucky; that if the child be removed to Mississippi it would result in preventing him from his right as had been agreed in the order. That if he undertook to make visits, or to quit his employment to follow to Mississippi, he would lose his seniority and retirement rights, and would be unable to obtain employment again of the kind in which he had been engaged for many years. He said the wife owned a home in Winchester, but none in Mississippi. This raised issue,

and proof was heard on depositions and orally. Upon submission the court entered an order directing that all the provisions of the judgment remain as written, with exception that it "is now adjudged that the child shall not be taken from Kentucky." This appeal is from that order.

The proof taken in the divorce action consisted of deposition of the wife, and one other witness, without cross-examination. Appellant testified that she was thirty-two years of age, a nurse and stenographer. That the husband was of a jealous disposition and continuously since 1938 had accused her of "being with different men," many accusations made in the presence of her associates and daughter. She denied the truth of these statements, and relates several instances of his having struck and choked her. She was employed from 1936 to the time of the suit; she bought all furniture and took care of household duties and at times hired a servant for the purpose. Her testimony as to the husband publicly making charges against her was corroborated by a neighbor, who also testified as to seeing bruises on her person when she came to work. This witness testified that the wife was the proper party to have custody of the child.

The proof on the motion was heard orally, with the depositions taken in the divorce case. Appellant testified that she had concluded that it would be best for her and the child's welfare to move to Mississippi where her mother and sister lived. She had been unable to secure suitable persons in Winchester to take care of the child while she was at work. If she moved to Natchez her mother and sister would care for the child while she worked. She had formerly lived in Mississippi until she married. She had made arrangements for an apartment, which she and her mother planned to occupy, and until it was available she and the child would live with her sister in a five room apartment.

Appellant owned the house in Winchester, but owed $3500 on it, and another debt of $1,000. She valued the home around $6,000. She said if it were sold she and her mother planned to buy a house in Mississippi; she did not see how she could keep the child in Winchester and bring it up properly. She thought she would be

able to take care of the child without the $10 per week from the father, and she "didn't want any support from him." She said the father had no place to keep the child; his relatives lived in Alabama and Mississippi. She was sure her proposed move would be for the best interest of the child and for her, because appellee continued to make accusations. She expected to get a job with her brother-in-law in Natchez, and said that salaries were better there than in Winchester.

The mother lived in Natchez; she had helped take care of the child during the summer, from June to the latter part of August, but thought the climate in Mississippi was better for her health. She had engaged a four room apartment for the last of October; until they procured possession they would stay with the other daughter, who, as well as the son-in-law, would be glad to have them as they were fond of the child. She said they had splendid accessible schools in Natchez.

Appellee testified that he was 49 years of age. He boarded in the home of Mrs. Reece. He worked in Lexington for Western Union. He started in 1915, giving him a thirty-one year period of service. He was an operator and local manager for the past twelve years. He was also a carpenter and worked at this trade at spare times. He had had custody of the child regularly at week ends, and their relations were pleasant. He was very fond of the child, and if she were taken to Mississippi he would not be able to see her, unless he quit his job, thus losing his seniority. Without showing ownership of property, beyond his salary, he said he was financially able to care for the child.

The proof shows that he had been married twice before. There were three children by the first wife, cared for by his mother in Alabama, and one child by the second wife, which she "took away from me." He worked from two o'clock in the afternoon to twelve at night, but thought he could get somebody to care for the child while he was at work, or that his unmarried sister, who lived in Mississippi, would come and help him, though he was not at all sure of that. He did not think he could get transferred to Mississippi though he had worked there before. He said that when he had the child for week ends he sometimes took her to Lexington

to the Phoenix Hotel, and sometimes left her with friends. She slept in the same bed with him. When she was at the hotel the bell boy watched her; this was only one time for a few hours. He said he took the child to church and Sunday School when she was with him.

Mrs. Lambeth on recall said that she had to go to work to help keep the family about seven months after the child was born. Her husband had suggested to her that Dr. Guerrent wanted her to work in the clinic, as he had heard she was a nurse. She protested, but ''he said we could use the money and for me to go and see him.'' She told him she did not want to leave the child, ''but he insisted that I take the job.'' Appellee says he objected to her taking the job. She also said, ''He makes things so unbearable here that I hate for my child to grow up in this town. He has said so many dirty things about me.''

This is one of that class of cases which present deplorable situations; one which calls for the application of reason, rather than any established law, since the end to be reached is a determination, when all facts are considered, as to what is best for the child. We approach the subject with the fixed principle that as far as the courts are concerned the welfare of the infant is the dominant factor; courts have always appreciated and advocated the fact that the mother of a child of tender years, especially a girl child, should have the custody and care, unless it be shown that she be an improper or unfit person to undertake the responsibility, to the extent as to become a settled rule. Sebastian v. Sebastian, 299 Ky. 833, 187 S. W. 2d 741, and cases cited. We find here nothing to show the mother's unfitness, save and except the charges made by the husband against the wife, to sustain which he not only fails to bring forward any proof, but as we read the testimony, does not himself say they had foundation in fact. Nor does appellee offer a single witness to assist the court in determining his fitness to assume the grave responsibility.

The proof is silent as to whether or not appellee contributes anything to the four children by former marriages. It may be assumed that he does, and if this be so, he, from his showing as to earnings, would not be financially able to have this child's care, or to furnish

her with what she is entitled to have. From his testimony alone we are impressed with the belief that his situation is such that it would be impossible for him to give the child the necessities of life; certainly not such care as the mother would. It would appear to us to be for the best welfare of the child to have her in the care of the mother; better than to place the responsibility on the father, who is away from his home a great portion of the time, leaving her in charge of hired help, and strangers, rather than with the mother and surrounded by her mother's close relatives, who, as far as the record shows, are able and willing to aid.

Something must give way here, and while the father evinces a fondness for the girl and a desire to have her custody, he, like we are compelled to do, should apply the rule of reason and look first to the best welfare of his daughter. So, the ultimate is that he or the court should allow the mother and child to move to Mississippi where the situation will be better both for the mother and child, or require her to live in Winchester where, by reason of circumstances, life for both would be unpleasant.

We take into consideration and appreciate the fact that the father would be deprived of weekly visitation or custodial privileges and companionship, except on necessarily infrequent occasions during vacation periods, but when looking to what is our paramount duty, the welfare of the child, and after careful consideration of the proof, we have reached the conclusion that the chancellor should have awarded custody to the mother, and sustained her motion to take the child with her to Natchez, Mississippi, retaining on the docket the case, insofar as it relates to the custody of the child, of course with rights of visitation. This opinion should not be construed as applying to the removal of the child to any other place than as is here proposed by the mother.

Judgment reversed, with directions for orders consistent with this opinion.