## Skidmore et al. v. Fada Realty Co. et al.

June 20, 1947.

Roscoe Conkling, Judge.

Finley F. Gibson and H. E. Rose for appellants.

R. P. Hobson and Woodward, Dawson, Hobson & Fulton for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

John C. Skidmore and certain other persons residing in the St. Thomas More Subdivision in Louisville brought this action against the Fada Realty Company and the Archer-Meder Corporation to recover damages

for injuries alleged to have been sustained because of false and fraudulent representations made to them which induced them to purchase certain real estate from the defendants. The action was tried in the name of the Skidmores and they are the only appellants on this appeal.

The appellees defended on the ground that: "One who signs a written contract for the purchase of property, real or personal, can not thereafter be heard to say that his contract was different from what the writing says, or that there were terms and conditions in the contract not set out in the writing." They further contend: "It has always been recognized that, where the execution of a contract is procured by fraud, or where the contract as written was entered into through the mutual mistake of the parties, it may be reformed, and, as thus reformed, enforced, but we have no such case here." At the conclusion of the evidence a directed verdict was given in favor of the appellees because it was the view of the trial judge that the appellants failed to sustain their charge of fraudulent representations; hence this appeal.

In brief, the evidence for the appellants is to the effect that officers of the appellees represented to them that the house which they purchased was built according to FHA plans and specifications, that it was built of good material and the construction done in a workmanlike manner. They said also there were signs in the subdivision which contained the words "FHA Approved Homes." They testified that the house was of substandard construction in a number of respects and that it would take some $3000.00 to put it in proper condition. A representative of the appellees said no plans and specifications were used in building the house other than their own. Judge Roscoe Dalton, Federal Housing Administrator for Kentucky, testified, in substance, that the FHA had no actual building plans and specifications, but did have a set of minimum requirements. He said, however, that his organization made three inspections of the house; one when the foundation was completed, one when the roof was on, or about that time, and one when the house was completed. We gather also from his testimony that the FHA relies to some

extent upon the investigations made by the first lender after the plans and specifications are submitted to it. In answer to the question, "Does he have to rely upon the statement of the builder that he did comply with FHA specifications in that instance (cement floor)," Judge Dalton said: "Yes, we have to rely upon that, that that part of our requirements have been complied with. We can not be there all the time to check all these things. We make that a part of our agreement to insure the loan."

The contract of purchase which was signed by the appellants appears to be a standard form used by realty companies in Louisville. At the bottom it contained the wording, "Subject to the approval of the FHA." Of course, the position of the appellees is that the contract of purchase made no reference to FHA plans and specifications, but merely referred to FHA approval; and, since the loan was approved, their contract was fulfilled.

We take a different view, however. One can not read the record in this case without reaching the conclusion that there is "something rotten in Denmark." While the FHA may not furnish detailed blueprints and plans for the construction of a house, it certainly has minimum requirements which its officials at least think have been met before it approves a loan. Any layman seeing a sign reciting "FHA Approved Homes," and who was told the house he was buying was approved by FHA, would be justified in assuming that the organization's minimum requirements had been met. The appellants charged and introduced proof to the effect that fraudulent representations were made to them. We think they made out a case for their side. Of course the appellees may be able to bring forth proof which will completely overcome that of the appellants, but that is not the case now before us for determination.

The recent case of Adams v. Fada Realty Company, 305 Ky. 194, 202 S. W. 2d 439, 440, and authorities cited therein, amply support the views herein expressed. The question involved in this case was determined adversely to the appellees in that case, since the basis of the plaintiffs' action was the same. The same trial judge refused to permit the plaintiffs in that action to introduce any

proof when the contract of sale was presented, the only difference in the contract in that action and the one before us being that the FHA loan had already been approved. We said the trial court erred in refusing to permit the plaintiffs to introduce parol evidence in support of their allegations of fraudulent representations. In commenting upon the statements in the plaintiffs' avowal, we said: "This testimony shows facts from which a jury could conclude that the agent of appellees represented that the property was constructed of first class materials, and that the work of construction was performed in a workmanlike manner. It likewise disclosed facts from which the jury could conclude that inferior materials were used, and that the work was not performed in a workmanlike manner. It is unnecessary, for the purpose of this opinion, to recite the testimony in detail."

For the reasons stated the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.