## Brodbeck v. Grant et al.

January 23, 1948.

Lawrence F. Speckman, Judge.

382

Tilford & Wetherby for appellant.

L. G. Bradbury and J. J. Kavanaugh for appellee.

Opinion of the Court by Judge Rees—Reversing.

This case presents for determination a question always delicate and usually difficult. The question is: Who is entitled to the custody of Betty Jane Grant, a nine year old girl, her mother or her paternal aunt in whose home she has lived since she was seven years of age? Custody of the child was awarded to her aunt, Mrs. Blanche Knapp, and her mother, Mrs. Elsie Elizabeth Brodbeck, has appealed.

The chancellor based his judgment entirely on the marital records of appellant and her daughter, Carolyn Grant. Appellant is now married to her fourth husband, and her daughter, Carolyn, at the age of eighteen is married to her third husband. These circumstances alone convinced the chancellor that appellant is not the proper person to have the custody of her daughter, and that the best interests of the child will be served by leaving her in the custody of appellee Mrs. Knapp. The pertinent facts, briefly stated, are these:

Appellant was placed in a Presbyterian orphanage when she was eighteen months old, and remained there until she was seventeen years of age when she married John W. Hite. She lived with him until his death sixteen months later. After his death she married William Martin by whom she had two sons, one now twenty-nine years of age and the other twenty-five. Martin deserted her, and she obtained a divorce and the custody of the two children in 1924. In March, 1926, she married the appellee Albert Wesley Grant, and by him had two

children, Carolyn who was eighteen years of age and Betty Jane who was nine when the proof in this proceeding was taken. In October, 1944, she sued Grant for a divorce on the ground of cruel and inhuman treatment, and asked for the custody of their two infant children. Shortly after instituting the divorce action appellant, with her two children, went to Salt Lake City, Utah, where she obtained employment as a nurse in a large hospital at a salary of $175 a month. The younger child soon became ill because of the high altitude, and her physician informed appellant that Betty Jane should be taken to a lower altitude. In February, 1945, she returned to Louisville with Betty Jane and endeavored to find a home for her, but was unable to locate a satisfactory one and early in March she entered into an agreement whereby Mrs. Knapp was given custody of the child. This agreement was later made part of the judgment divorcing her from the child's father. She returned to Salt Lake City and resumed her duties at the hospital. The judgment of divorce was entered in May, 1945, and on June 30, 1945, appellant married her present husband, M. H. Brodbeck, whom she met in March, 1945. At the time of the marriage Brodbeck was engaged in the electrical appliance business in Salt Lake City, and was seventy years of age. In the late summer of 1946 he sold his business for $16,500, and he and Mrs. Brodbeck moved to Lexington, Kentucky, where they bought real estate which was conveyed to them jointly with a survivorship clause. Both of them testified that this was done for the purpose of providing a home for Betty Jane, since it was impossible for her to live in Salt Lake City on account of the high altitude. There is no question as to the desire or ability of Mr. Brodbeck to provide an adequate home for the child. Appellant has contributed materially to the child's support since she was placed in the custody of Mrs. Knapp. While living in Salt Lake City she purchased and sent to the child more than $300 worth of clothes, and sent her money from time to time in sums of $1 to $5. On one occasion she gave Mrs. Knapp $50. She purchased two chests of drawers for $69 and sent one to her daughter and one to the fifteen year old daughter of Mrs. Knapp. On one occasion her husband gave her $200 to make a trip to Kentucky to see her

daughter. That she has a deep affection for the child is thoroughly established by the record, and that her moral character is above reproach is not questioned. The fine character of Mrs. Knapp and her motherly care of Betty Jane since the latter has been a member of her household is generously conceded by appellant. When asked if she had anything against Mrs. Knapp, appellant said: "I don't have one thing against Mrs. Knapp. Blanche is a wonderful person. There is not a better mother in the world than she is. It is not that I have anything against Mrs. Knapp, or that I think she hasn't taken the proper care of my baby, because I know that she has. I made that agreement with her because I had to go away to work."

In adjudging the right of custody of an infant of tender age, the welfare and interest of the child must be considered, but the mother's rights should prevail over claims of others unless she is shown not to be suitable for that responsibility. This rule has been applied without exception by this court. Lambeth v. Lambeth, 305 Ky. 188, 202 S. W. 2d 436; Callahan v. Callahan, 296 Ky. 444, 177 S. W. 2d 565; Altemeier v. Rachford, 291 Ky. 845, 165 S. W. 2d 848; Fugate v. Fugate, 291 Ky. 266, 163 S. W. 2d 451; Stafford v. Stafford, 287 Ky. 804, 155 S. W. 2d 220; Staggs v. Parks, 286 Ky. 398, 150 S. W. 2d 690; Johnson v. Cook, 274 Ky. 841, 120 S. W. 2d 675; Stapleton v. Poynter, 111 Ky. 264, 62 S. W. 730, 53 L. R. A. 784, 98 Am. St. Rep. 411. As heretofore stated, the chancellor found appellant to be an unsuitable person because of her and her daughter's marital records. The most that the record discloses is that each of them was unfortunate in two instances in the selection of husbands, but there is no evidence that either was at fault when these marriages failed. If appellant is to be held accountable for any shortcomings of her older daughter, she must receive credit for rearing two sons both of whom are admittedly young men of fine character. A careful examination of the record convinces us that the chancellor erred in refusing to award custody of the child to appellant. It appears from briefs that appellant and her husband sold their home in Lexington after the judgment was rendered and contracted to purchase a home in Louisville. It is conceded in appellant's brief that she should be awarded cus-

tody only upon a showing by her that she has provided an adequate and proper home for the infant.

The judgment is reversed with directions to enter a judgment in conformity herewith.