### Brown et al. v. Fudge.

March 17, 1950.

M. G. Bingham, Judge.

Sampson B. Knuckles and Hiram H. Owens for appellee.

STANLEY, COMMISSIONER—Affirming.

This is a habeas corpus proceeding having incidents of a suit in equity instituted by a mother to obtain the custody of her child from his paternal grandparents. In a former proceeding between the same parties, a county judge pro tem rendered judgment for the respondents. On appeal we held the county judge or court was without jurisdiction since it was not shown that there was no circuit judge in the county at the time. We were without authority to consider any question except that one. The appeal was, therefore, dismissed since the judgment was void. Fudge v. Brown, 311 Ky. 381, 224 S. W. 2d 137.

The respondents raised the question, and now argue,

that the fact that there was an appeal from the judgment constitutes a bar to this second proceeding. The habeas corpus statutes contained in the Criminal Code of Practice, Sec. 399, et seq. were amended in 1940 to authorize an appeal to this court. To conform, Sec. 429 was amended to provide that "if an appeal was taken from the previous judgment that fact may be given in evidence and shall bar a trial under the subsequent writ." Whatever may be the construction of this provision under a different state of facts, it certainly does not apply here. The previous judgment was void—was no judgment at all. Obviously it could not bar further proceeding where there was jurisdiction. This was recognized by the concluding sentence of our opinion.

The petition is styled, "Before the Judge of the Knox County and Quarterly Courts" and is simply marked, "Filed December 31, 1949." Complaint is made that it was not an action in court and that it could not have been in both the county and quarterly courts and does not show that it was filed in either. It is to be observed, first, that the Criminal Code of Practice provision calls for the issuance of the writ of habeas corpus by "any judge of a county" court when there is no circuit judge in the county. Since it is in his judicial capacity and not individual that the judge acts, the proceeding, in reality, is one in the court over which he presides. Yet, his action is without a jury or other assistance. The style of the case, as one before a judge of the named court, is in strict conformity with the Criminal Code of Practice and certainly is sufficient. To determine otherwise would be to exalt form above substance and recognize technicality over reality.

The county judge issued the writ and directed the surrender of the child's custody to his mother, now Mrs. Stella Fudge. The grandparents appeal.

In the language of the day, Mrs. Fudge was a "war bride." She married John Brown, an American soldier stationed in England, after they had been acquainted for nearly a year. He was sent to France about a week after the marriage and did not return to England. He made provision for her and the child to come to this country and provided an apartment for them in Xenia, Ohio, where he lived. But he did not meet her at the train and never lived with her. The parties do not agree as to

his visitation. He told her to get a divorce if she wanted one. She learned she had not been a resident long enough, and it was agreed that the divorce proceeding should be prosecuted by him. It was granted by the Court of Common Pleas of Greene County, Ohio, on October 10, 1946, on the ground of "gross neglect of duty." Apparently, there was an agreement respecting the custody of the child. The judgment gave the complete custody of the child to the mother and ordered the father to pay $10 a week for his support. It seems that he conformed to this part of the judgment. He married again within a week after the divorce.

The father's parents visited the child and his mother in Xenia. When he was a year old, they brought the mother and him to Knox County for a visit and suggested that they take care of the child since the mother was working, and it was necessary that he be cared for by another while she was at work. She consented. Afterwards she came to Knox County to visit them and the child as often as she could. She sent all or most of the money contributed by the child's father for his care to his grandparents. There was no trouble until the mother had remarried and wanted her child. Her request was persistently denied. Finally, the condition became such that another son who lived with the grandparents brought out a shotgun and threatened her.

The mother married John Fudge, and they live near a village about five miles from Xenia, Ohio. He makes good wages as an upholsterer in that city and lives on a four acre place which he bought under the "G. I. Bill of Rights." They now have a child about a year old and are well established. Fudge testified, "I want very much to bring him back with us" and, "I would like to have him grow up with my other child and make a nice brother for him." He had put up the money for this litigation and promised that he would take care of this child the same as his own. Both the mother and her husband are of good habits and industrious. There is no reflection upon the mother's character except the child may have been begotten before marriage. Under the circumstances we do not regard that as a material consideration. There are some insinuations by her former husband and the construction by his parents of some general statement they say she made to them, all of which she denied.

The grandparents are 66 and 60 years old respectively. They live eight or nine miles from Barbourville on a 25 acre farm and run a store and filling station. Another son who is unmarried lives with them. These grandparents are estimable people and have given and would give this child a good home and loving care. Very naturally they are devoted to him and he to them. He is now four and a half years old. The child's father lives in Dayton, Ohio, and while he has visited his child and parents and desires that his child remain with them, he has turned him over to his parents altogether.

The character of the parties and their ability to care for this child from the standpoint of finances, education and religious training is substantially the same.

Of all the various classes of cases that come to us there is none more trying or often more difficult than that which relates to the care and custody of a little child. His life and destiny are within the responsibility and determination of the court. Therefore, always the prime consideration is the child's welfare. But coupled with this, when conditions are equal or nearly so, is the natural right of a parent. As stated in Cummins v. Bird, 230 Ky. 296, 19 S. W. 2d 959, 960, "The judicial inquiry is not confined or limited to the moral character and financial ability of the particular parent that may be asserting a right to the custody of his child. It comprehends a proper consideration of those essential elements of the problem, but, in addition thereto, it requires due weight to be given to all other facts and factors that have a bearing on the complex and responsible duty of rearing, training, and fostering a child according to its potential capacity and consistently with its individual character and needs."

In that case the court decided that the welfare of a child required that her custody be retained by her grandparents. One of the most potent considerations was the previous neglect of the father, who was seeking to regain her custody. That condition in no way applies in the present case in respect of the mother.

We had circumstances similar to this case in Setser v. Caldwell, 300 Ky. 356, 188 S. W. 2d 451, where a mother sought custody of her two children from their paternal grandparents. We again declared that the natural right of a parent will prevail against other persons

even though they be grandparents, and that their devotion to the child will not be permitted to outweigh the natural right of the parent to. the child's custody. In such a contest where other conditions are substantially equal or not disproportionate in respect of the paramount concern of the children's welfare, the mother is entitled to their custody unless it be shown that she is not suitable to have them and their rearing. Stafford v. Stafford, 287 Ky. 804, 155 S. W. 2d 220. We well appreciate the devotion of these grandparents and their overwhelming desire to keep the child and believe without doubt they would give him the most loving care. But it is not shown that the mother is unsuitable to have the custody and rearing of her child. Moreover, we must consider the fact that as a matter of nature the mother is better able to care for a child of tender age than grandparents who have passed the meridian of life, and that the child will have the benefit of being reared along with a brother whose difference in age is not great. This subject is treated extensively in Johnson v. Cook, 274 Ky. 841, 120 S. W. 2d 675. There are many other cases of like reasoning and decision.

We are of opinion, therefore, that the county judge rightly determined the case, and the judgment is affirmed.