Ola HAMILTON et al., Appellants,

v.

Riley BROWN et al., Appellees.

Court of Appeals of Kentucky.

Nov. 5, 1954.

Stanley G. Lemon, Liberty, L. C. Lawrence, Jamestown, for appellants.

Morris Montgomery, Oliver Popplewell, Liberty, for appellees.

CAMMACK, Justice.

Mr. and Mrs. Riley Brown filed a complaint on July 15, 1953, seeking to adopt Linda Carter, now six years of age. Ola Carter Hamilton and Frank Hamilton, mother and stepfather of the child, attempted to regain her custody through a habeas corpus proceeding filed August 24, 1953.

The chancellor denied both the adoption complaint and the habeas corpus complaint, but awarded custody of Linda to Mr. and Mrs. Brown for nine months of each year and to Mr. and Mrs. Hamilton the remaining three months of each year during the summer. Mr. and Mrs. Hamilton have appealed from that judgment in its entirety. There is no cross-appeal. It is their contention that Linda's mother, Ola Hamilton, is entitled to her full custody.

The only question before us is whether Mrs. Hamilton is entitled to the custody of her daughter. It will be necessary, therefore, to review the facts in the case.

Mr. and Mrs. Brown are 47 and 42 years of age respectively, and have been residents of Casey County all their lives. They own a farm of approximately 100 acres, from which they obtain their livelihood. Mr. Brown estimated that his yearly income from the farm amounted to about $3,000. Mr. and Mrs. Brown have been married over 25 years, but have no children of their own.

Mrs. Brown said that Ola Hamilton (who had not then married Frank Hamilton) came to her home the first of March, 1950, and stayed two or three days. Mrs. Hamilton wanted to go north to obtain work but could not take Linda with her. She entered into an agreement with Mrs. Brown whereby Mrs. Brown would keep the child for $5. per week until the following July. At that time (March 1950), Linda was approximately two years old. Linda has resided with Mr. and Mrs. Brown continuously since that time. Mrs. Brown stated that during this entire period Ola has sent her only $60. However, Ola placed the amount at $200. Ola had been divorced from Hen-

ry Carter in March, 1948. In that proceeding custody of a son, now 14 years old, was awarded to Carter.

Mrs. Brown said that during the first few months Ola visited her child frequently for short periods, but as time passed, she visited her only twice each year—at Christmas and the Fourth of July. Mrs. Hamilton explained this by saying that the first few months she lived in Cincinnati, Ohio, about 200 miles away, while in the latter period she resided in Pontiac, Illinois, approximately 500 miles from Casey County.

Mrs. Brown observed that on these visits Ola was usually accompanied by a strange man, or men. When she visited Linda at Christmas of 1952, she was accompanied by a man whom she said she expected to marry the following February. However, on July 4, 1953, Frank Hamilton, who is now her husband and co-appellant herein, was with her.

Mr. and Mrs. Brown are not members of a church, but Mrs. Brown said that she and Linda attend church regularly, while Mr. Brown attends infrequently. The church and school are about one-half mile from their home. Mrs. Brown stated that Linda is happy with them and they want to keep her.

A schoolteacher, who resided with the Browns during the school years of 1951, 1952 and 1953, said that Mrs. Brown was a good housekeeper; that the Browns were devoted to Linda and treated her as if she were their own child; and that they provided her with the food, clothing and care needed by a child of such tender years. A number of other witnesses who are neighbors of the Browns said they were of good moral character and were honest, upright citizens. They stated the Browns have a nice comfortable home and that they gave Linda the care and treatment she should have.

On cross-examination Mr. Brown admitted that he was once arrested and given a 60 day jail sentence in Federal Court for operating a moonshine still. He attempted to explain his presence at the still by saying that he had been hired by another man to drive him to the still and while they were there the Federal officers made the raid. He also admitted that he was fined $21.50 for drunkenness. His version of this incident was to the effect that he had drunk too much beer in town and on his way home he got sleepy so he pulled off the road and went to sleep. While he was asleep in his car the State Police arrested him. He says, however, that since Linda has been with them he drinks only an occasional beer and very infrequently takes a drink of whiskey. On the other hand, the Hamiltons admitted they indulge in a beer "every once in a while."

Mr. and Mrs. Brown introduced considerable evidence to show that Mrs. Hamilton had engaged in considerable lewd and immoral conduct. There is evidence showing that she had been committed to the Kentucky House of Reform before her first marriage. Her first husband, Henry Carter, testified that she made a very unsatisfactory wife and mother, to say the least. He stated, and she admitted, that he was not the father of the two children born to her during their marriage. According to him, she did not give the children proper care. On one occasion she went to Cincinnati with another man. Carter and Ola's mother went to Cincinnati to look for her and they found her and the man in the police station where they had been placed for drunkenness. He said she got along very well until spring and they got their garden out and then she would start "running around." He said she did this about four times during their marriage.

Mrs. Della W. Farris, with whom Ola boarded for a year in Cincinnati when Linda was very young, testified that Ola neglected her and that she had to take care of Linda. There is some indication from Mrs. Farris' testimony that Ola became pregnant at this time and that she had an abortion performed.

Ola and Frank Hamilton were married February 11, 1953. A child was born to them on May 24, 1953. It is apparent that she was six months pregnant at the time of

their marriage. Ola testified on cross-examination that she had known Frank three months when she began having sexual intercourse with him. It is indicated in the record that the delay of their marriage was occasioned by the fact that Mr. Hamilton's former wife was slow in obtaining a divorce from him. He brought suit against her for divorce but was unable to obtain it, and she was granted the divorce in January, 1953.

Ola stated also on cross-examination that Seward Parsons is the father of her first child, Bobbie Carter, and a man in Cincinnati is Linda's father. She vigorously denied that she became pregnant while she was boarding with Mrs. Farris or had an abortion performed.

Ola said that at the time she left Linda with Mrs. Brown she was living with her mother and had no income, no means of supporting herself or her child, and could not obtain work if she was burdened with the child. It was in desperation that she left Linda with the Browns and went north in an effort to find work. She first obtained employment in a restaurant in Cincinnati. Then she got a job in a factory. Later she went to Pontiac, Illinois, where she met and married Frank Hamilton. She is 32 years old and he is 33. Mrs. Brown had previously testified that at one time Ola had agreed to permit them to adopt Linda, but Ola emphatically denied such an agreement. She stated that she has been going to church and has been trying to live a clean life since she met and married Frank Hamilton. The Hamiltons live two and one-half blocks from a school in Pontiac, and a short distance from the church which she and Frank attend. They live in a three-room apartment, which consists of a kitchenette, bedroom and living room. They say, however, they have plans to purchase a home of their own. Recently, Ola's son, Bobbie, has gone to live with them. If they remain where they live presently they will be crowded considerably during the times Linda is with them.

Frank Hamilton testified that he operates a ditching machine and, in addition, does farm work. He said his yearly earnings average between six and seven thousand dollars. He is a member of a church in Pontiac. He states he is willing to provide for Linda as a child of his own if Ola is awarded her custody.

Mr. and Mrs. Glen Durham, of Pontiac, who have been acquainted with the Hamiltons for several years, testified that their reputation among the citizens of that community for being morally upright citizens is good. They stated also that the Hamiltons have a nice apartment and that they have heard them discuss plans to purchase a home.

Pearl Parson, Ola's sister, has visited them in Pontiac. She said Ola is a good housekeeper and keeps her apartment neat and clean.

We are cognizant of the rule that a mother will not be denied custody of a child of tender years unless other parties' rights to its custody are clearly paramount to her right or it is shown that she is not a suitable person for such responsibility. Brodbeck v. Grant, 306 Ky. 381, 208 S.W.2d 56; Horn v. Dreschel, 298 Ky. 427, 183 S.W.2d 22. It is our difficult and unpleasant duty under the evidence discussed to decide whether the Browns or the Hamiltons should be awarded the custody of Linda. It is not contended that the Browns have a paramount right to her custody. The only question before us is whether it would be to Linda's best interest to award her custody to her mother now, in view of the evidence presented in the case.

We agree with the chancellor that Mrs. Hamilton is not now entitled to have the custody of her daughter. He was very liberal in giving her Linda's custody for three months of each year. In reaching this conclusion we have taken into consideration the fact that Linda has been given a good home by the Browns, and not her mother, during the past four and one-half years. We have taken into consideration also Ola's conduct during her adult life. If she continues to follow the same pattern of behavior, clearly she is not a per-

son who should be entrusted with the responsibility of caring for an infant girl. There is some indication that Ola has decided to change her mode of life, but we are not disposed to say at this time that she has reformed sufficiently to be entrusted with Linda's custody.

The chancellor retained jurisdiction of Linda's custody by requiring Mrs. Hamilton to post a $2,500 bond before she removes her from the state. He has the power and right to make such changes in the award of Linda's custody as he may deem to her best interest.

Judgment affirmed.