Eva Jo LEWIS (Now Mrs. Wayne W. Woodward), Appellant,

v.

Raphael Lee LEWIS et al., Appellees.

Court of Appeals of Kentucky.

Feb. 10, 1961.

———◆———

Charles L. Hobson, Frankfort, for appellant.

R. L. Hardin, Carrollton, for appellee.

MONTGOMERY, Judge.

Eva Jo Lewis, now Woodward, appeals from an order denying her the custody of her son, Toby Michael Lewis, hereinafter referred to as Mike. The paternal grandmother, Mrs. Norvin Lewis, resisted the mother's efforts.

Eva Jo graduated from high school at the age of seventeen years. One month later, after a brief courtship, she married the appellee, Raphael Lee (Toby) Lewis, ten years her senior. They lived with his parents on their farm in Carroll County until he entered the military service in 1943. Eva Jo accompanied her husband to California. After her husband had gone overseas and after the birth of Mike on October 4, 1945, she returned to the home of her husband's parents in December.

Mike's father returned from overseas in January 1946. Three days after his return, appellant left him. She also left Mike with him on the farm. The father's continued excessive indulgence in alcoholic pleasures, as claimed by appellant, culminated in an uncontested divorce being granted to appellant on May 21, 1946. The divorce judgment provides:

"It is further ordered that the custody of Toby Michael be, and it is awarded to Eva Jo Lewis with the understanding that said child shall be cared for in the home of Mrs. Norvin Lewis."

This is the order that appellant has sought, unsuccessfully, to have nullified. Appellant contends that she never agreed to such an order, although she was represented by counsel employed and paid for by her father.

After another short courtship, appellant married Marvin Satchwell in August 1946. He was a Carroll county native and then stationed at Scott Field, Illinois, in the Air Force. During that marriage, appellant worked and assisted her husband in trying to make a home to which she eventually hoped to bring Mike. During that time, she visited Mike and sent him presents from time to time. The marriage broke up, apparently, because of her husband's refusal to let Mike live with them.

Appellant left Satchwell and went to Daytona Beach, Florida, in 1954, where she lived in an apartment with a friend she had known in Washington. She was divorced from Satchwell in 1955. Appellant went to work in the occupied American zone in Germany in May 1955. Shortly after her arrival there, she became acquainted with her present husband, Wayne W. Woodward, now a Lieutenant Colonel in the Air Force. They were married July 2, 1956. Before doing so, she satisfied herself that Colonel Woodward's attitude was favorable toward having her son in their home.

Appellant and her husband returned to this country in November 1956 and visited with Mike. Colonel Woodward's next permanent duty station was Hamilton Air Force Base located just north of San Fran-

cisco. He soon was assigned residence quarters on the base.

Successive motions to redocket the divorce action and to modify the custody order were filed by appellant on May 9, 1957, and August 22, 1958. The first motion was overruled on June 27, 1957, the second on September 23, 1958. The appeal is from the latter order. Much proof was heard by the Chancellor on the fitness of the parties involved and the advantages and disadvantages of Mike's living with his mother or remaining with his grandmother.

Without going into detail, the evidence for the appellant shows that she has maintained a strong desire to have her son; that circumstances, at times beyond her control, may have prevented her from attaining her desire; that she has kept in touch with Mike by visits, letters, and gifts; that she and her present husband have an attractive and pleasant home; and that they may be able to make available to Mike better educational advantages than he would have with his grandmother. The evidence shows that appellant and her present husband are well-behaved, respected members of their military community, and are active in religious and Boy Scout activities.

The record indicates that Colonel Woodward would be happy to have Mike in his home. Colonel Woodward, at the time he testified in 1958, had had twenty-six years of military service. He stated that his income was in excess of $15,000 per year and that he would have good retirement pay. Although his retirement seemed imminent, he did not indicate with any degree of certainty just what his plans might be.

For the purpose of this appeal, Mike's father need not be considered. He has since remarried.

Since December 1945, when he was less than three months old, Mike has lived with his grandparents, Mr. and Mrs. Norvin Lewis. The Lewises are in their sixties. They live on a farm of ninety-odd acres, with a two-acre tobacco base. It is worth $18,000 to $20,000 and is free from debt. Appellant contrasts the lack of running water and inside plumbing facilities and the general condition of the Lewis home with her modern living quarters.

In denying the first motion to modify the custody order, the Chancellor found "that no testimony was introduced reflecting upon the moral fitness, integrity or ability of the plaintiff to properly care for her infant child, Toby Michael Lewis, however, it appears from the testimony that said child has resided in the home of his grandmother, Mrs. Norvin Lewis, for over eleven years; that the mother of said child has visited with said child only one or two times a year and that she has contributed nothing towards the support of said child during said time; that he is an intelligent, well-conducted child, who has attended school at Sanders, Kentucky, since school age and now stands in the first twenty-five per cent of his class; that the grandparents live in a rural section of Carroll County, Kentucky, in what is known as the Whites Run neighborhood, one of the best farming areas in the County; that they own their own farm; that it is located in a neighborhood accessible to a good school and on a paved highway and that the child now and has been for some time past active in 4-H programs and is the owner of his own livestock and produces and sells his own allotment of tobacco under his farm program and is well satisfied and contented and expressed a desire in his testimony to remain with his grandmother; that his grandmother and her husband have lived in the same neighborhood for over thirty years and have been married for almost a half century; that the family has a good reputation for morality and Christianity; that during the period of time that the child has been in the home of Mrs. Norvin Lewis she has personally cared for him during his infant and childhood diseases and has regularly caused him to attend school, church and Sunday School and that he has, during said period, been regularly attended by a licensed physician and

accorded all the care, love and affection of a natural parent."

■ In denying the second motion fifteen months later, the Chancellor made no findings of fact; thus, it is presumed that there was no change in the facts so found.

Mike testified at the hearing on the second motion. He was almost thirteen years of age and is now past fifteen years. His testimony demonstrates that he is an intelligent, self-reliant, attractive, alert child, with an active interest in sports, farming, school, and church. A reading of the record indicates that he might well qualify as a typical American farm boy. The record shows that the grandparents have done an excellent job of rearing this boy. It is significant that Mike repeatedly expressed his desire to remain with his grandparents even though the attractive features of living with his mother and the greater opportunities that would be made available to him were pointed out. His testimony shows that his decision was made after consideration and independently of persuasion or suggestion.

■ The custody of a child is to be determined by what is best for its welfare. Stafford v. Stafford, 287 Ky. 804, 155 S.W. 2d 220. Both the present circumstances and the future prospects must be considered. Horn v. Dreschel, 298 Ky. 427, 183 S.W.2d 22. In that case, it was pointed out that the future education of the child was a vital element to be considered. In the instant case, the appellant presents the possibility of a college education for Mike. Such an education is usually much to be desired; however, it does not insure future well-being, success, or happiness. This prospect did not appeal to Mike, as shown by his testimony. Nevertheless, the refusal to go with his mother does not rule out all possibility that he might attend college. From the evidence, one is led to believe that if Mike desires to continue his education through college (he stated his intention to attend high school), a way would be found by Mike and his grandparents to attain that goal.

■ The most difficult child custody cases are those involving a contest between a mother and a grandparent. The decision is always made more difficult because of the anticipated unhappiness of the disappointed litigant. This consideration is ever present but must be ignored in considering what is best for the welfare of the child.

■ Here, we have a mother who through the years has been without her child and has longed for the time when she could have a home for him. She is able to offer him advantages not now available to him. On the other hand, the child has known no home except with his grandparents, who have demonstrated a love for him as only grandparents can have. With them, there are all the advantages available to him that are available to other boys in his home community. He is well-settled and happy.

■ Mike's expressed desire to remain with his grandparents is entitled to great weight. Haymes v. Haymes, Ky., 269 S.W. 2d 237. To go to California and live with a mother he scarcely knows and a stepfather who is practically unknown to him could have a very upsetting and disastrous effect upon him. Living with his grandparents, Mike knows what his life and welfare will be; going to live with his mother is full of uncertainties. It was pointed out in Shaw v. Graham, Ky., 310 S.W.2d 522, that the severance of home ties of long standing is an important and delicate consideration in custody cases. See also Bridges v. Matthews, 276 Ky. 59, 122 S.W. 2d 1021. In a very similar set of circumstances, the right of a grandfather to the custody of a child was upheld against the mother. Runions v. Powers, Ky., 258 S.W. 2d 514.

In weighing the considerations presented, it is concluded that the welfare of Mike

will be better served by his remaining in the custody of his grandmother. No abuse of discretion by the Chancellor has been shown. Garner v. Garner, Ky., 282 S.W.2d 850.

Judgment affirmed.