[Civ. No. 15593. Second Dist., Div. Three. July 2, 1947.]

ANNETTE J. RHODES, Appellant, v. ELMER C. RHODES, Respondent.

Lyle W. Rucker for Appellant.

No appearance for Respondent.

SHINN, Acting P. J.—In a default action for divorce a judgment was entered denying plaintiff a divorce, upon the ground that she had not been a resident of the State of California for one year prior to the institution of the action. She appeals from the judgment. After plaintiff had testified, in answer to questions by her attorney, that she married defendant in Pasadena, California, February 20, 1931, and separated from him in August, 1944; that there were no children, and no community property; and that she had resided in the county of Los Angeles, State of California, for more than one year immediately preceding the filing of her action, she was interrogated by the court concerning her residence. In response to the court's questions she testified that she had come to Pasadena in 1919, and thereafter resided there with her mother; that she married defendant in Pasadena in 1931, and resided with her husband in the home of her mother, paying the latter for the accommodations of herself and husband until 1939; that Mr. Rhodes was employed by the Internal Revenue Alcohol Tax Bureau and in 1939, was given a special assignment in Atlanta, Georgia; that she went with him to Atlanta and lived there or thereabouts for about three years while Mr. Rhodes carried on his work for the Internal Revenue Bureau. He was "moved around all the time" and a part of the time the parties lived in Macon. Mr. Rhodes then entered the military service and was transferred to a dozen different points during the following two years. Mrs. Rhodes then went to Washington, D. C., and for a period of some two years held a position as employee of a United States Senator from Mississippi. While the parties were living in Pasadena they accumulated household goods of their own and when they left California their goods were stored and remained in storage until Mrs. Rhodes returned to Pasadena in January, 1945. During all this time Mrs. Rhodes maintained her registration as a voter and voted in Pasadena. She visited her husband at numerous places while he was in the service and before taking a position in Washington she returned to Pasadena and stayed with her mother on annual visits of about seven weeks' duration. Her action for divorce was filed some two months after her return to Pasadena from Washington. Plaintiff testified that her husband was subject to transfer at any time; that Pasadena was always considered their home and that they had never established a permanent residence or intended to

remain at any of the several places where her husband was temporarily stationed. Mrs. Rhodes' mother during all this time maintained the home in Pasadena where Mr. and Mrs. Rhodes had lived prior to Mr. Rhodes' assignment to a Georgia office of the Internal Revenue Tax Bureau. Plaintiff also testified that the position which she held in Washington was merely a temporary one which she intended to hold during the period of her husband's service in the armed forces.

The views of the trial court as to the plaintiff's testimony were first stated as follows: "I am in grave doubt, Mr. Rucker, that this woman *was* residing in this county for three months and in the State for one year immediately preceding the commencement of the action. When you take a job and work for a couple of years, as she was, three thousand miles away, that is a usual indication of residence. Where, as her husband did, he works for three years in Atlanta, Georgia, that is usually the best indication of residence." While the matter was under discussion the court stated, "I am sorry, Mr. Rucker, I can't agree with you. I will have to deny the divorce solely on the ground of lack of residence—jurisdiction. . . . I am satisfied that the facts do not establish residence." The decree was denied upon that ground. It appears from the record that at the very outset of the trial plaintiff's attorney announced to the court that he had a witness present from Washington, D. C., who might testify and "perhaps satisfy the Court" concerning the defendant, but as a result of the court's pronouncement plaintiff was given no opportunity to produce evidence in addition to her own testimony, and it is apparent, from the discussion which took place that the attorney was taken by surprise by the sudden ruling of the court in denying the divorce.

█ In so ruling, the trial court disregarded a firmly established and salutary rule of law applying to proof of residence of government employees. It has been uniformly held that a change of residence occasioned by the exercise of duties in connection with governmental civilian employment, irrespective of the length of time, does not bring about a change of domicile in the absence of clear proof of a concurrent intention to abandon the old domicile and acquire a new one. The principle was forcefully stated by Mr. Justice Rutledge in *Sweeney* v. *District of Columbia,* 113 F.2d 25 [129 A.L.R. 1370], where the Court of Appeals of the District of Columbia reviewed a finding of the Board of Tax Appeals that peti-

tioner Sweeney had acquired a domicile in Washington, D. C., through residence there for a period of 20 years as a government employee. In reversing this finding and holding that Sweeney had retained his domicile in Massachusetts, the court said (p. 32) : ''Accordingly we think that one who comes to the District and remains to render service to the Government which requires his presence here, may retain his domicile in the state from which he comes until the service terminates unless he gives *clear evidence* of his intention to forego his state allegiance. This conclusion, we think, is supported by sound policy, the clear weight of judicial authority, many instances of Congressional recognition in principle, and the long-established custom and practice of other officials and departments. Whether the principle is stated in terms of a presumption of continuity of state domiciliation during the Federal employment or of privilege derived from the dual form of government is perhaps a matter of more theoretical than practical consequence. The privilege of course could be waived. The presumption would require strong evidence to overcome it. In either case the state domicil could not be overthrown by *mere proof of long residence* during performance or *ambiguous showing of intention to change.* The considerations which we have held controlling require that evidence of intention to change be *clear and unequivocal,* whether its effect be waiver of privilege or to overcome a presumption.'' (Emphasis added.)

█ It would serve no useful purpose to review the many cases which have held that affirmative proof is required to show that one who is absent from the state of his domicile by reason of public employment has abandoned that domicile and established a new one. While many of the cases concern employees residing in the District of Columbia, the same principle is applicable to governmental employees, such as defendant in the instant case, who are subject to reassignment and transfer to places away from their established domicile. (For a collection of cases to this effect, see 106 A.L.R. 6 and 129 A.L.R. 1382 et seq.)

In section 244 of the Government Code is found codified the well-established rule of this and other jurisdictions that a residence can be changed only by the union of act and intent and that mere temporary absence from one's domicile for the purpose of engaging in employment, however long, will not effect a change of domicile where the intention is to be absent

for that purpose alone and upon the termination of such employment to return to the former established domicile. (See, *Estate of Peters,* 124 Cal.App. 75, 77 [12 P.2d 118]; 28 C.J.S., p. 32.)

The right to establish and maintain legal residence in the place of one's choice is one of the valuable attributes of citizenship. Major privileges and benefits which flow from legal residence in one jurisdiction may not be enjoyed in others. Some of these relate to the disposition of estates by will, to the ownership and descent of real property, to rights and privileges in probate administration, to taxes upon income, to the benefits of social security laws, to the right to hold public office, and the right of suffrage. These and kindred rights dependent upon residence have been recognized as being of major importance in many different situations and especially to governmental employees involuntarily moved away from their own established places of domicile. Such rights are not to be swept aside lightly. The right asserted by plaintiff here to sue for divorce might appear to be of minor importance, but in other situations which we have suggested denial of rights dependent on proof of residence might prove disastrous. ■ There is no exceptional rule of law in divorce matters with respect to acquiring or losing legal residence. No greater quantum of proof of residence is required than in other cases, except in the matter of corroboration. ■ Both plaintiff and defendant were clearly within the category of government employees and the principles pertaining thereto. They were obliged to leave their established California domicile temporarily because of the transfer of defendant by the Internal Revenue Bureau to an assignment outside of the state. It is clear that there was nothing permanent in that assignment, and that defendant was at all times subject to be retransferred to some other district. It is equally clear that plaintiff's employment and her residence in Washington, as well, were likewise merely temporary. Plaintiff and defendant had never had an established domicile except in Pasadena, with plaintiff's mother; their absence from California was involuntary; they had no settled business or home in Atlanta or Macon or any other of the places where they resided; they never had occasion to remove their household belongings from storage in Pasadena, and their absence from the state was not from choice. Plaintiff testified as to their intention to return to Pasadena when their employment would permit and her credibility was not questioned by the court in

the discussion which took place. We find nothing whatever in the record to indicate that Mr. and Mrs. Rhodes ever abandoned their California residence or intended to establish a permanent residence elsewhere. Plaintiff's evidence presented a case of a bona fide domicile in Pasadena. The ruling was upon a point of law, namely, the sufficiency of the plaintiff's testimony, given full credit, to establish legal residence in California. The court erred in denying her a decree of divorce upon her testimony alone.

The case should be reversed for further proceedings. We do not, of course, hold that the trial court is obliged to find, without further evidence, that plaintiff, at the time of the institution of the action, was and had been a bona fide resident of Los Angeles County for more than one year. Her testimony upon that point would require corroboration, and it will be for the court to say upon the entire evidence whether the fact has been established.

The judgment is reversed.

Wood, J., and Kincaid, J. pro tem., concurred.