[L. A. No. 20369.   In Bank.   Oct. 1, 1948.]

PAUL W. SAMPSELL, JR., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

McLaughlin, McGinley & Hanson and J. A. McLaughlin for Petitioner.

Martin S. Ryan, Harold W. Kennedy, County Counsel, and Douglas De Coster, Deputy County Counsel, for Respondent.

TRAYNOR, J.—Petitioner, plaintiff in a divorce action pending in respondent court, seeks a writ of mandamus to compel respondent to hear his application for an order pendente lite awarding him custody of the minor child of plaintiff and defendant.

The parties to the divorce action were married in 1941 and have one child, born on September 13, 1944. The child lived with both parents in this state in the county of Los Angeles until June 3, 1946, when the parents separated. The child continued to live in California with defendant, his mother, until October 25, 1946, when she left California taking the child with her. Thereafter they lived in Nevada until June 7, 1947. Since that date they have lived in Utah.

Plaintiff filed a complaint against defendant in respondent court on January 2, 1947, seeking a divorce, custody of the minor child, and a division of the community property. The substance of plaintiff's complaint is as follows: Defendant took the child out of the state without plaintiff's knowledge or consent and established a temporary abode for herself and the child in a motor court in Las Vegas, Nevada. On December 11, 1946, defendant filed an action for divorce in Nevada, fraudulently claiming to be domiciled within that state, although in fact she intended to remain there only long enough to obtain a divorce and then to marry William Holt, a resident of Utah. Plaintiff was not personally served with process in the Nevada action. Plaintiff claims that he is a fit person to have custody of the child and that defendant is not.

Defendant was not personally served in California in the California divorce action; but on April 4, 1947, she appeared through her attorney and filed an answer. In her answer she alleged that on February 4, 1947, she obtained a Nevada decree of divorce and was also awarded custody of the child. She also alleged that she is entitled to all of the community

property of the parties and requested the court to award this property to her.

On July 8, 1947, plaintiff applied to respondent court for an order pendente lite awarding him custody of the child pending trial of the California action. Plaintiff's affidavit states that plaintiff and defendant were residents of the county of Los Angeles, State of California, when defendant took the child out of the county of Los Angeles on October 25, 1946, without plaintiff's knowledge and consent; that defendant informed him before she left that she intended to obtain a Nevada divorce and then to marry William Holt, a resident of *Utah*. Before defendant had obtained a Nevada divorce, plaintiff, on January 2, 1947, brought an action for divorce and custody of the minor child of the parties. At that time, under the provisions of Government Code, section 244, all three persons, plaintiff, defendant, and the minor child, were domiciled in California. Subsequently on February 4th, 1947, defendant obtained an allegedly invalid Nevada divorce. On June 7, 1947, she married William Holt, and since that time she and the child have been living in Utah. Plaintiff filed the application for an order pendente lite in respondent court on July 7th, 1947, alleging the foregoing facts and that neither defendant nor William Holt are fit persons to have the custody of the child and that he has in effect been denied even the right to see his child. An order to show cause why the order requested should not be issued, or, in the alternative why plaintiff should not have reasonable visitation rights, was served on defendant's attorneys, who had made a general appearance in the principal action. On the date on which the order to show cause was returnable defendant appeared through her attorney and made a motion to dismiss the proceeding with respect to the custody of the child, on the ground that the court has no jurisdiction. Defendant contended that respondent court lacks jurisdiction because the child was not in the State of California at the time of the hearing and has not been here at any time since the plaintiff filed his divorce complaint on January 2, 1947. The court granted defendant's motion and dismissed the order to show cause "for lack of jurisdiction."

Plaintiff thereupon filed a petition for a writ of mandamus to compel respondent court to proceed with the hearing. Respondent court and defendant, as real party in interest, jointly filed points and authorities in opposition to the petition for writ of mandamus, stating that, "The respondent

court *refused to proceed with the hearing of the application to determine custody of the child on the sole ground that it had no jurisdiction to do so*, based upon the affirmative facts set forth in the affidavit of petitioner in support of the order to show cause, which affidavit of the petitioner showed on its face that defendant and the minor child were physically outside of the State of California before the commencement of the action, and at all times subsequent to the commencement of the action. . . .

''The attorney for the defendant, Martin S. Ryan, appeared at the date set for the hearing on the order to show cause re custody, and at said time made a motion on behalf of the defendant to dismiss the order to show cause for lack of jurisdiction. *This motion was granted because it appeared that the court did not have jurisdiction*, for the reasons hereinabove set forth and by reason of the law pertaining to the factual situation, as hereinafter cited.

''Petitioner states that the issuance of a writ of mandate is proper wherever the court refuses to exercise jurisdiction in a proceeding over which it has jurisdiction. *There seems to be no question but what this is the law, but it does not apply in this case for the reason that it is the contention of the respondents that respondent court at no time had jurisdiction to make any order regarding the custody of the minor child*. . . .

''*The court not having jurisdiction originally in the case at bar nor jurisdiction at the time of the hearing of the order to show cause*, the respondent court rightfully granted the motion of respondent Gladys J. Sampsell because the respondent court could not assume jurisdiction as appeared in the pleadings when they showed to the contrary.'' (Italics added.) This court granted the alternative writ in order to determine whether the respondent court has jurisdiction to continue with the proceeding. Respondent court and defendant, as real party in interest, have jointly filed a demurrer to the alternative writ on the ground that the superior court does not have jurisdiction to make a custody award of a minor child when that child has not been within the state during the pendency of the action.

The question has arisen whether mandamus is the proper remedy by which plaintiff may test the correctness of the trial court's ruling that it has no jurisdiction over the custody of the child. It has been suggested that the rule

laid down in *Lincoln* v. *Superior Court,* 22 Cal.2d 304 [139 P.2d 13], is controlling on this question and that mandamus is not available.

In the Lincoln case the question of the availability of mandamus depended on "two controverted issues of fact which are to be determined upon the sufficiency of the evidence (the record of the proceedings in the trial court) to establish the allegations of the petition. The dispute is not as to the *substance,* but only as to the effect of such evidence. Such issues are: (1) The petition alleges (and the answer in proper form denied all the averments) 'That said superior court refused to hear or consider, and has not heard or considered said motion . . . or said order to show cause, and has held that it has no jurisdiction to hear or determine said motion or determine whether said plaintiff is entitled to relief thereby sought and will not do so unless required by order and mandate of this Court; (2) the petition alleges (and the answer in proper form denies the averments) 'That petitioner has no plain, speedy or adequate remedy at law. . . .' We find the record insufficient to sustain petitioner in either of the controverted issues." (*Lincoln* v. *Superior Court, supra,* at 306-307.)

In the present case we have no controverted issues of fact. The plaintiff has alleged, and the respondent court and defendant have conceded, that the trial court did not give a hearing on the merits but "refused to proceed with the hearing on the application to determine custody of the child on the sole ground that it had no jurisdiction to do so, based on the affirmative facts set forth in the affidavit of petitioner in support of the order to show cause, which affidavit of petitioner showed on its face that the defendant and the minor child were physically outside of the State of California before the commencement of the action, and at all times subsequent to the commencement of the action. . . ." (Respondent's Points and Authorities, pp. 1-2.)

This court in the Lincoln case determined that petitioner had been given a hearing on the merits. In that case the petitioner had commenced an action against her husband for separate maintenance in a California superior court, and that court issued an order to show cause with reference to temporary support. The defendant appeared on the date set for hearing and filed an affidavit, supported by the exemplified records of a Virginia court, showing that petitioner had submitted himself to the jurisdiction of the Virginia

court in an action for divorce and that an order for her support made by the Virginia court in that action was being complied with by defendant. The defendant thereupon filed a motion, based on these facts, to vacate and set aside the order to show cause on two grounds: (1) Lack of jurisdiction to proceed because of the pendency of the Virginia action; (2) the Virginia proceeding was res judicata. This court held that ''Neither of such grounds raises a jurisdictional point. . . . The fact that the plaintiff was then receiving support from the defendant pursuant to a court order was, however, material evidence upon the hearing. (See *Smith* v. *Smith* (1905), 147 Cal. 143 [81 P. 411].) The order to show cause came on for hearing upon the complaint and plaintiff's affidavit upon which the order had been issued, and upon defendant's showing in opposition as heretofore set forth.

''After receiving the evidence of the parties, as above related, the superior court made an order which is reflected in its minutes as follows: 'Order to Show Cause re Alimony Pendente Lite, Costs, Attorney's Fees and Restraining Order *comes on for hearing*; . . . Defendant's motion to quash *and Dismiss* is granted.' (Italics added.) Petitioner now contends that the trial court, by the action above related, *refused to exercise its jurisdiction* to hear and determine the order to show cause, and seeks the mandate of this court to compel the superior court 'at a specified time and place, to set said order to show cause . . . for immediate hearing and to determine said matter on its merits.' The answer to petitioner's demand is that the superior court *has* exercised its jurisdiction and has conducted a hearing on the merits. Whether its order was erroneous is not now before us.'' (*Ibid.* at 308, italics by the court.)

''In the case out of which this proceeding arose, *the defendant's motion to dismiss and the evidence which he presented to the trial court did not constitute a mere objection to the jurisdiction of such court*. On the contrary, such procedure was a challenge on the merits to the plaintiff's application and called for an affirmative exercise of jurisdiction by the court. . . .

''As shown by the record, the trial court conducted a hearing on the mooted order to show cause. It had before it and received the proofs both of plaintiff and of defendant. It considered such proofs, gave to them what it thought was their proper legal effect, and made its order dismissing the proceed-

ing. This was, jurisdictionally, a complete trial of such proceeding." (*Ibid.* at 314, italics added.)

In the present case the defendant presented no evidence or counteraffidavits. Her motion was not a challenge on the merits; it was based on the sole ground that the court lacked jurisdiction because the child was not physically present within the State of California at the time the action was commenced or at any time during the pendency of the action. The trial court heard no evidence and refused to consider the merits of the case before it; it looked at the affidavit of petitioner solely to determine its own jurisdiction. If we were to hold that the dismissal for lack of jurisdiction based on the facts stated in petitioner's affidavit is a determination on the merits precluding the issuance of mandamus, the following cases among others would have to be overruled: *Temple* v. *Superior Court,* 70 Cal. 211 [11 P. 699]; *Hennessy* v. *Superior Court,* 194 Cal. 368 [228 P. 862]; *Times Mirror Co.* v. *Superior Court,* 3 Cal.2d 309, 312 [44 P.2d 547]; *Cahill* v. *Superior Court,* 145 Cal. 42, 44-45 [78 P. 467]; *Miller* v. *Municipal Court,* 22 Cal.2d 818, 852 [142 P.2d 297]; *Levy* v. *Superior Court,* 15 Cal.2d 692 [104 P.2d 770, 129 A.L.R. 956]; *Katenkamp* v. *Superior Court,* 16 Cal.2d 696, 697 [108 P.2d 1]; *Balconades Ballroom* v. *Superior Court,* 109 Cal.App. 612 [293 P. 631]; *Smith* v. *Superior Court,* 21 Cal.App.2d 160 [69 P.2d 176]; *Archer* v. *Superior Court,* 81 Cal.App. 742 [254 P. 939]; *MacPherson* v. *Superior Court,* 22 Cal.App. 2d 425, 432 [71 P.2d 91]; see also *Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474, 477 [114 P. 978]; cases in other jurisdictions collected in 4 A.L.R. 582; 82 A.L.R. 1163; Ferris, Extraordinary Legal Remedies, § 300.

In the early case of *Temple* v. *Superior Court,* 70 Cal. 211 [11 P. 699], this court held that mandamus should issue to compel a trial court to hear and determine a proceeding to have a person adjudged guilty of contempt, although the trial court had dismissed the proceeding "on the ground of want of jurisdiction" because the case came within Code of Civil Procedure section 336. The court stated in that case that "We have examined the record, and are of the opinion that the matter is within the jurisdiction of the court. The facts stated bring the case clearly within section 1210 of the Code of Civil Procedure, and under such circumstances the court cannot, by holding without reason that it has no jurisdiction of the proceeding, divest itself of jurisdiction, and evade the duty of hearing and determining it."

(70 Cal. 211-212.) That case has been followed in innumerable cases including *Hennessy* v. *Superior Court,* 194 Cal. 368 [228 P. 862], where this court granted mandamus to hear a motion to tax costs, when the trial court denied the motion for lack of jurisdiction. The court considered the question of the availability of mandamus at length and quoted the following language from *Cahill* v. *Superior Court,* 145 Cal. 42, at 46 [78 P. 467], "The code provides that the writ of mandate may be issued to compel the performance of an act which the law specially enjoins, as a duty resulting from an office. (Code Civ. Proc. sec. 1085.) The law specially enjoins upon the superior court, and upon the judge thereof, the duty of hearing and determining all matters which are within its jurisdiction and which come properly before it. The motion under consideration did come properly before that court, but the judge decided, as a matter of law . . . that the court had no power in any case to make orders of the kind there applied for, and upon that ground only refused to proceed to the merits of the application. If the person holding office could thus decide what were the duties pertaining thereto which the law specially enjoins him to perform, the writ of mandate would be practically useless. The decision refusing to act which gives occasion for the writ would also furnish sufficient cause for denying it."

Nor is the opinion of the District Court of Appeal in *Brock* v. *Superior Court,* 119 Cal.App. 5, 6 [5 P.2d 659], inconsistent with these principles. In the Brock case, the trial court had entered an order denying an application for attorney fees, costs, and temporary support of a minor child. The District Court of Appeal stated that "Petitioner claims that the court has refused to exercise its jurisdiction in the matter, but the facts stated in the petition show the contrary. When the order to show cause came before the court the matter was submitted upon a stipulation of facts. Thereupon the court entered an order denying the requested relief, 'on account of this Court not having jurisdiction to award temporary attorney fees, costs or support on two grounds: that the child is not within the jurisdiction of this Court, also that provisions in Section 137 Civ. Code., in re Attorney's fees, costs and support money do not apply in this case.' " (119 Cal.App. 5, 6.)

The trial court did not dismiss the proceeding but evidently gave a full hearing on the stipulated facts. It denied the relief requested by the applicant on the ground that it lacked

authority to give the relief under the circumstances of the case. Since the petitioner was afforded the same hearing that he would have been entitled to had the trial court entertained a different theory as to its jurisdiction, he was not entitled to mandamus to compel a new hearing. ■ Mandamus is available to compel the court to give a full hearing in the case before it, although it is not available to inform the trial court as to how it should rule with respect to the merits of the case. (*Hilmer* v. *Superior Court*, 220 Cal. 71, 73 [29 P.2d 175].) It follows that if the trial court has given the petitioner the full hearing to which he is entitled, mandamus will not ordinarily lie merely to correct the decision reached by the court, whether its decision be based on an erroneous conception of its own jurisdiction or an error of law. In the present case, however, the respondent court has conceded that it did not give plaintiff a full hearing on his application, but dismissed the proceeding and refused to proceed with the hearing. This court should therefore issue the writ unless there is "a plain, speedy, and adequate remedy in the ordinary course of law." (Code Civ. Proc. § 1086.)

■  Nor does the fact that plaintiff might have appealed from the order of dismissal necessarily preclude his resort to mandamus. "The remedy by appeal, conceding that there is such, is not always an answer to a petition for *mandamus*. This writ must be issued when 'there is not a plain, speedy, and adequate remedy in the ordinary course of law' (sec. 1086, Code Civ. Proc.); that the right of appeal is not always a speedy or adequate remedy is well settled." (*Christ* v. *Superior Court*, 211 Cal. 593, 595 [296 P. 612]; *Lloyd* v. *Superior Court*, 208 Cal. 622, 631 [283 P. 931].) Thus, in *Hennessy* v. *Superior Court, supra*, 194 Cal. 368, 374, this court held that "Conceding the order refusing to tax costs to be an appealable order, that alternative would not of itself be a sufficient reason for holding that remedy exclusive." (See also *Archer* v. *Superior Court*, 81 Cal.App. 742, 745 [254 P. 939]. Other cases where the dismissal was appealable include *Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309, 312 [44 P.2d 547]; *Balconades Ballroom* v. *Superior Court*, 109 Cal. App. 612 [293 P. 631].)

■  Plaintiff alleges that an appeal would not be an adequate remedy in this case because of the pendency of the principal action for custody and divorce and because such an appeal would take at least a year, during which time he would not only be deprived of the custody of his child but

would be unable even to see the child, while the child would lose all recollection of his father. It is unquestioned that in the principal action the trial court refused to grant petitioner a hearing with respect to the custody of the child regardless of the relative fitness of himself or the defendant and regardless of the interests of the child. This court has issued the alternative writ on the concessions of respondent that it was available if the court had jurisdiction. To deny the writ now on the grounds that plaintiff might appeal would require plaintiff to await the outcome of the principal action before perfecting his appeal. Meanwhile, he would be deprived of the custody of his child and the right to see it without a hearing as to the propriety of a custody order or of the merits of his claim that defendant is unfit to have the care of the child. It therefore follows that the remedy of mandamus is available to plaintiff if respondent court had jurisdiction to determine the question of the custody of the child.

■    The trial court unquestionably had jurisdiction over the parties, for by answering plaintiff's complaint on the merits defendant waived any claim of lack of jurisdiction over her. (Code Civ. Proc. § 1014; *Jardine* v. *Superior Court,* 213 Cal. 301, 304 [2 P.2d 756, 79 A.L.R. 291].)    ■    This appearance, however, did not confer jurisdiction on the court over the subject matter of the action, for such jurisdiction may not be waived by a party or conferred on the court by consent. (*Taylor* v. *Taylor,* 192 Cal. 71, 78 [218 P. 756, 51 A.L.R. 1074]; *Harrington* v. *Superior Court,* 194 Cal. 185, 191 [228 P. 15].) The question before this court, therefore, is whether respondent court has jurisdiction over the subject matter of the custody proceeding. (*Dorman* v. *Friendly,* 146 Fla. 732, 737 [1 So.2d 734]; *Titcomb* v. *Superior Court,* 220 Cal. 34, 40 [29 P.2d 206].)

It must be assumed that the child was domiciled in this state at the time of the commencement of the proceeding in the trial court whether the domicile of the child is based on that of the mother or that of the father.* Defendant con-

---

*The parties have argued the question whether in California the domicile of child after the separation of the parents remains that of the child's father or is that of the parent with which it lives. Plaintiff contends that Government Code, section 244(d), providing that ''The residence of the father during his life . . . is the residence of the unmarried minor child'' applies until the custody of the child has been determined by a court of competent jurisdiction. On the other hand, defendant, relying on Civil Code, sections 197, 198, and 213, contends that Government Code, section 244(d), applies only to the residence or domicile of a

tends that the child was domiciled in Nevada on the grounds that defendant acquired a Nevada domicile and that the domicile of the child was that of the mother. Under the allegations of the petition, however, the mother was still domiciled in Los Angeles County, California, at the time the California proceeding was commenced.** Since defendant has demurred to the alternative writ, the allegations of plaintiff's petition must be regarded as true. Moreover, plaintiff's complaint and his affidavit in support of the application for an order pendente lite contained similar allegations, and respondent court has refused to take jurisdiction to determine the correctness of these allegations.

---

child whose parents have not separated. These sections provide that the father and mother of a legitimate child are equally entitled to its custody (§ 197) ; that after separation of the parents, the ''father, as such, has no rights superior to those of the wife and mother, in regard to the care, custody, education and control of the children of the marriage while such husband and wife live separate and apart from each other'' (§ 198) ; and that the parent entitled to the child's custody has a right to change the child's domicile. (§ 213.) There is authority in support of plaintiff's contention in *Luck* v. *Luck*, 92 Cal. 653, 655 [28 P. 787], but that case was decided before section 197 was amended to its present form (Stats. 1913, p. 52), and the opinion does not mention sections 198 and 213. (*Cf. Cole* v. *Superior Court*, 28 Cal.App. 1, 5-6 [151 P. 169], which also does not mention these sections.) Similar statutes have been interpreted to mean that, after separation, the child takes the domicile of the parent with whom it lives. (See 1 Beale, Conflict of Laws, § 32.2; Stumberg, Conflict of Laws, p. 43; 5 Vernier, American Family Laws, p. 227.) This interpretation would be in accord with the rule applicable to the determination of the residence of the child under provisions of the Welfare and Institutions Code. (§ 17.1(a) (b).)

**Her domicile in California continued until she acquired a new one, even though she may have left California intending eventually to go to Utah and not to return to this state. A new domicile cannot be acquired until a person actually lives in a new state with the intention of remaining there. (Gov. Code, § 244; *Rhodes* v. *Rhodes*, 80 Cal. App. 2d 723, 726 [182 P.2d 275]; *County of Los Angeles* v. *Superior Court*, 128 Cal.App. 522, 528 [18 P.2d 112]; additional cases collected 9 Cal.Jur. 834-835; cases in other jurisdictions collected, Kennan, Residence and Domicile, §§ 92, 93, 100, 118-122; 1 Beale, Conflict of Laws, 133; 5 A.L.R. 296; 17 Am.Jur. 609-610; 28 C.J.S. 30.) Therefore, defendant did not acquire a Nevada domicile simply because she intended to reside in Utah. She could not have acquired a Utah domicile at the time the complaint in the divorce action was filed or at the time of her appearance in that action, for she had not then gone to Utah to live. Whether defendant may now be domiciled in Utah is immaterial to the question of jurisdiction, for if the trial court had jurisdiction at the time of the commencement of the action, such jurisdiction could not be lost by any subsequent change of residence or domicile. Jurisdiction once acquired is not defeated by subsequent action of the parties. (*Maloney* v. *Maloney*, 67 Cal.App.2d 278, 280 [154 P.2d 426]; *Roberts* v. *Roberts*, 300 Ky. 454 [189 S.W.2d 691]; additional cases collected 171 A.L.R., 1405.)

Defendant, relying on *De La Montanya* v. *De La Montanya,* 112 Cal. 101 [44 P. 345, 53 Am.St.Rep. 165, 32 L.R.A. 82] ; *In re Chandler,* 36 Cal.App.2d 583 [97 P.2d 1048] ; and *Maloney* v. *Maloney,* 67 Cal.App.2d 278 [154 P.2d 426], contends that regardless of the child's domicile a court of this state has no jurisdiction of a child custody proceeding if the child is not physically present within the state at some time during the pendency of the action. Although there is language in the De La Montanya case, *supra* at 110-111, that is critical of the theory that the domicile of the child alone provides a satisfactory basis for jurisdiction of the subject matter since the child might be domiciled in this state without ever having lived here (*cf. Titcomb* v. *Superior Court, supra* 220 Cal. at 42), the actual holding of that case relates to the question of personal jurisdiction over the parties. It was held that the question of custody is not solely one of status and cannot be decided by a court unless it has personal jurisdiction over both parents. It was further held that under the Fourteenth Amendment to the United States Constitution as construed in *Pennoyer* v. *Neff,* 95 U.S. 714 [24 L.Ed. 565], constructive service was insufficient to give the court personal jurisdiction over a parent who was not present within the state although domiciled in California at the time of the commencement of the action. (*Cf. Milliken* v. *Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357] ; cases collected 126 A.L.R. 1474; Rest. Judgments § 16.) It is unnecessary to reexamine the holding of the De La Montanya case with respect to the problem of personal jurisdiction, for the defendant in this case submitted herself to the jurisdiction of respondent court.

Defendant also relies on *In re Chandler, supra,* 36 Cal.App. 2d 583, 585, for the proposition that jurisdiction over the subject matter of the custody of children in divorce actions depends on the physical presence of the children in the state. According to the opinion in that case, however, the children were not only absent from the state but had become domiciled in Texas before the action was commenced. Defendant, although appearing in the divorce action, refused to obey an order of the court that he bring the children to California. He was held in contempt by the trial court, but on petition for habeas corpus the district court of appeal ordered him discharged from custody on the ground that the order was void. The trial court lacked jurisdiction of the subject

matter of the custody of the children, for they were domiciled and present in another state during the pendency of the action. In the course of its opinion the court stated that "Respondent concedes that it is well settled that our courts have no authority to award custody of children not within their territorial jurisdiction . . ." (*In re Chandler, supra* at p. 585.) Not only was reference to this concession unnecessary to the decision, but a similar statement in *Warren v. Warren,* 127 Cal.App. 231, 240 [15 P.2d 556] was disapproved by this court in *Foster v. Foster,* 8 Cal.2d 719, 729 [68 P.2d 719].

Both parties have relied on *Maloney v. Maloney,* 67 Cal.App. 2d 278, 280 [154 P.2d 426]. In that case both parents and the child were domiciled in California and were actually living within this state until, during the course of a divorce action, the plaintiff left the state taking the children with him. It was held that the removal of the children did not deprive the trial court of jurisdiction to determine their custody. Nor did the plaintiff, by leaving the state, deprive the court of personal jurisdiction over him. "The court thereafter had the power to enter an effective judgment for him or against him, *in personam,* relative to any substantial allegation of the pleadings. . . . Plaintiff cannot question the jurisdiction which by his own act he conferred. Although the children are beyond the territorial limits of California, they are still under the jurisdiction of the court below (*Hersey v. Hersey,* 271 Mass. 545 [171 N.E. 815, 818, 70 A.L.R. 518]), which attached at the time the suit was filed." (*Maloney v. Maloney, supra* at 280.)

Insofar as the foregoing statement from the Maloney case shows a submission to the personal jurisdiction of the court by the plaintiff it cannot be questioned. ▮ Defendant contends that the court also held that plaintiff submitted the subject matter of the children's custody to the jurisdiction of the trial court. A party, however, cannot confer upon a court jurisdiction over the subject matter that it does not already have (*Taylor v. Taylor, supra,* 192 Cal. 71, 78; *Harrington v. Superior Court,* 194 Cal. 185, 191 [228 P. 15]). The trial court in the Maloney case had jurisdiction over the subject matter because the children were domiciled and living in California at the time the action was commenced, and the mere physical absence of the children from the state during a part of the trial did not deprive the court of jurisdiction. In the present case the child was domiciled in this state at

the time the action was commenced but was not living here. Thus, neither the Maloney case nor the Chandler case are determinative of the question whether the domicile of the child in this case presents a sufficient basis for jurisdiction over the child's custody.

Several theories have been advanced with respect to the correct basis for jurisdiction over the subject matter of a child custody proceeding. According to one theory jurisdiction over children's custody is based on *in personam* jurisdiction over the children's parents. (*Anderson* v. *Anderson,* 74 W.Va. 124, 126 [81 S.E. 706].) Another theory regards the question of custody as simply one of status and as such subject to the control of the courts of the state where the child is domiciled. (Rest. Conflicts, 117, 148; see Goodrich, *Custody of Children,* 7 Corn L.Q. 1, 2; 2 Beale, Conflict of Laws, p. 717; *Dorman* v. *Friendly,* 146 Fla. 732, 740 [1 So.2d 734].) A third theory requires the child to be physically present within the state, on the ground that the basic problem before the court is to determine what the best interest of the child is, and the court most qualified to do so is the one having access to the child. (See Stumberg, Children and Conflict of Laws, 8 Univ.Chic. L.Rev. 42, 55-56; Stumberg, Conflict of Laws, p. 299; *Sheehy* v. *Sheehy,* 88 N.H. 223, 225 [186 A. 1, 107 A.L.R. 635].)

There is, of course, no question that the courts of a particular state have jurisdiction to determine the child's custody if the court has jurisdiction *in personam* over both parents, and the child is both physically present and domiciled within the state. The court then has a substantial basis for determining not only the rights of the parents but what the best interest of the child is. All the basic elements in each of the foregoing theories are present. Difficulties have been encountered, however, when one or more of these elements are lacking.

It is apparent that each of the foregoing theories, if regarded as exclusive tests of jurisdiction, ignores important considerations underlying the other theories. It would, however, be no solution of the problem to require all these elements to be present before a court could acquire jurisdiction. Unfortunately cases will arise where one or two elements are lacking, and some court must have jurisdiction in the interest of the child to make proper provision for its custody. The principal difficulty with each of the theories as exclusive tests of jurisdiction is the difficulty inherent in any attempt to apply hard and fast rules of res judicata and conflict of laws

to the problem of child custody. The principal cases and most of the secondary authorities have been concerned less with the question whether a court has jurisdiction than with the question whether the courts of other states are bound by the particular decision, when that jurisdiction has been exercised. The respective theories are based on the assumption that in order to achieve finality in this matter one court at one given time must have an exclusive right to determine the issue. ''From a standpoint of expediency and of achieving socially desirable ends, there seems to be only one argument in favor of confining jurisdiction to a single state; that it will produce stability and discourage the crossing of state lines to avoid the effect of unpalatable custody decrees.'' (Stansbury, Custody and Maintenance Law Across State Lines, 10 Law and Contemp. Prob. 819, 830.) It is doubtful, however, whether the best interest of the child, the paramount consideration in custody proceedings, is served thereby.

There is authority for the proposition that courts of two or more states may have concurrent jurisdiction over the custody of a child. (*Finlay* v. *Finlay*, 240 N.Y. 429, 431 [148 N.E. 624, 40 A.L.R. 937]; *Goldsmith* v. *Salkey*, 131 Tex. 139, 145-147 [112 S.W.2d 165, 116 A.L.R. 1293]; *Stafford* v. *Stafford*, 287 Ky. 804, 806 [155 S.W.2d 220].) In the interest of the child, there is no reason why the state where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why other states should not also have jurisdiction. As stated by Justice Cardozo in *Finlay* v. *Finlay*, 240 N.Y. 429, 431 [148 N.E. 624, 40 A.L.R. 937], ''The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. (*Woodworth* v. *Spring*, 4 Allen (Mass.) 321, 323; *White* v. *White*, 77 N.H. 26 [86 A. 353]; *Hanrahan* v. *Sears*, 72 N.H. 71, 72 [54 A. 702]; *Matter of Hubbard*, 82 N.Y. 90, 93.) For this, the residence of the child suffices though the domicile be elsewhere. (*Matter of Hubbard, supra.*) But the limits of the jurisdiction are suggested by its origin. The residence of the child may not be used as a pretence for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status. (*Cf. Kline* v. *Kline*, 57 Iowa 386 [10 N. 825, 42 Am.Rep. 47]; *Griffin* v. *Griffin*, 95 Ore. 78 [187 P. 598]; *Lanning* v. *Gregory*, 100 Tex. 310 [99 S.W. 542, 123 Am.St.

Rep. 809, 10 L.R.A. N.S. 690]; *Blackinton* v. *Blackinton*, 141 Mass. 432, 436 [5 N.E. 830, 55 Am.Rep. 484]; *Matter of Standish*, 197 App.Div. 176 [188 N.Y.S. 900].) Parents so situated must settle their controversies at home. Our courts will hold aloof when intervention is unnecessary for the welfare of the child."

Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there. On the other hand, if the jurisdiction of one state has been exercised over the child, there is no reason why, if the welfare of the particular child is a matter of real concern to the courts of another state, those courts may not also have jurisdiction, which might be exercised in the interest of the child "with respectful consideration to the prior determination of other courts similarly situated." (Stansbury, 10 Law and Contemp. Problems, *supra*, at pp. 830-831. See *Foster* v. *Foster*, 8 Cal. 2d 719, 726 [68 P.2d 719]; *Titcomb* v. *Superior Court, supra*, 220 Cal. 34, 39.) In any event, there is no reason why courts of one state should not be able to "assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child." (*Miller* v. *Schneider*, (Tex.Civ.App.) 170 S.W.2d 301, 303.)

The problem is not one of rendering custody decrees for the courts of other states to regard as final and conclusive determinations. Indeed such decrees are not given conclusive effect in our own courts, for under Civil Code, section 138, the court granting the decree "may at any time modify or vacate the same." In order to avoid interminable and vexatious litigation it is generally required that before modification or vacation of such a decree "there must be a change of circumstances arising after the original decree is entered, or at least a showing that facts were unknown to the party urging them at the time of the prior order . . ." (*Olson* v. *Olson*, 95 Cal.App. 594, 597 [272 P. 1113], quoted with approval in *Foster* v. *Foster, supra*, 8 Cal.2d 719, 726.) Whatever proof may be required for a modification or vacation of a custody decree, it is not a final judgment. (*Cooney*

v. *Cooney,* 25 Cal.2d 202, 208 [153 P.2d 334].) As a matter of comity the courts of this state treat valid custody decrees of the courts of sister states with the same respect as custody decrees of California courts. (*Foster* v. *Foster, supra* at 728-729; *Titcomb* v. *Superior Court,* 220 Cal. 34, 39 [29 P.2d 206].) No more or less respect for California decrees is expected from the courts of other states. If the decrees of California courts with respect to child custody are subject to modification or annulment in this state, they are likewise subject to modification or annulment in any state having jurisdiction over the subject matter, for such a decree "has no constitutional claim to more conclusive or final effect in the State of the forum that it has in the State where rendered." (*New York* v. *Halvey,* 330 U.S. 610 [67 S.Ct. 903, 91 L.Ed. 1133, 1136]; see Harper, *Conflict of Laws,* 47 Col.L. Rev. 883, 907-909.)

Since the courts of this state do not finally and conclusively determine custody in a divorce proceeding, there is no reason to attempt to arrive at some basis for jurisdiction that should be accepted as final and conclusive in all states. It is a sufficient basis for jurisdiction that the state "has a substantial interest in the welfare of the child or in the preservation of the family unit of which he is a part . . . and this jurisdiction may exist in two or more states at the same time." (Stansbury, 10 Law and Contemp. Prob. *supra* at 831.)

Since this is a proceeding in mandamus to determine only the question of whether the respondent court has jurisdiction over the subject matter of the custody proceeding, we are not concerned at this time with the question of how the jurisdiction of the respondent court should be exercised or whether under the facts of this case, as they may be determined by the trial court, it would be proper for the trial court to refuse to determine the custody of the minor child in the pending proceeding. It is sufficient that the respondent court has jurisdiction to hear petitioner's application for a custody award. It is likewise immaterial to the determination of this case whether defendant has been awarded custody of the child by a Nevada court. It may be assumed for the purposes of this decision that the temporary presence of the child in Nevada provided a sufficient basis for a custody award and that the decree of the Nevada court was valid to the extent that it determined the child's custody. (*Finlay* v. *Finlay, supra,* 240 N.Y. 429, 431; *cf.* Rest. Conflicts, § 118.)  Such a

decree does not deprive the California courts of jurisdiction over the child (see *Titcomb* v. *Superior Court, supra,* 220 Cal. 34, 39) for the state of domicile, where the child has lived most of its life, clearly has as substantial an interest in the child's welfare as a state in which the child's presence was merely temporary.

The fact that the child is now living in Utah, where it was taken by defendant sometime after the commencement of the present action, likewise does not deprive the respondent court of jurisdiction over the child's custody. The respondent court acquired jurisdiction over the subject matter of the custody of the child while the child was clearly domiciled within this state. Any subsequent change in the child's abode is relevant only to the determination of how the court's jurisdiction should be exercised with due regard for the welfare and best interest of the child. That question cannot be decided on the basis of the meager facts now before this court, even if it were proper in a mandamus proceeding to determine how the trial court should exercise its jurisdiction.

The trial court therefore has jurisdiction of the subject matter of the custody proceeding and of the parties thereto and must proceed with the hearing on the order to show cause why an order pendente lite should not be granted.

Let the peremptory writ issue as prayed.

Gibson, C. J., Edmonds, J., and Spence, J., concurred.

SCHAUER, J.—I dissent.

The primary question in this case is whether under the circumstances shown we shall use mandamus to compel a trial court to reverse an order dismissing a proceeding before it. This is not a case where the court simply refused to exercise jurisdiction at all; it is not a case where a mooted proceeding is left pending and undisposed of; here the court did exercise its jurisdiction in the premises upon the facts which it found, upon the evidence before it, in the way which it concluded was legally correct, and which finally and *completely disposed* of the particular proceeding before it. The majority opinion, taking a different view of the evidence and, seemingly, a different view of the law (although this last proposition must necessarily be conjectural, since the majority draws inferences from the evidence different from those impliedly drawn by the trial court), reverses the trial court's order dismissing an order to show cause.

In the exercise of its jurisdiction the trial court had issued the order to show cause, had set a date for hearing thereon, had proceeded with the hearing, had considered evidence from both parties, had impliedly found, upon ample evidence, that before the proceeding had been commenced the defendant in that action (the former wife of petitioner) had left California, taking with her the minor child of such defendant and petitioner and had established for herself and child a domicile outside of California. The trial court had also impliedly found, and there is no room for serious question as to the sufficiency of the evidence, that the defendant and the child had at all times subsequent to their original departure from California remained outside of this state and that the defendant refused to return to California and refused to bring, or to permit anyone to bring, the minor child from its new domicile into California. The evidence as to the fixed intent of the defendant wife to permanently relinquish her domicile in California and to live elsewhere is undisputed.

In the light of the recited facts the trial court concluded that no useful purpose would be subserved by hearing further evidence as to the claims of the plaintiff for an order temporarily, pending trial of the case on its merits, awarding the custody of the child, or visiting rights, to him, and, accordingly, entered its order dismissing the proceeding. It is such order of dismissal which the majority opinion by mandamus reverses.

Such holding marks a complete about face by this court as to its policy in respect to the use of mandate as a substitute for appeal, and, if we are to have any intelligible thread of consistency in our law on this subject, must be understood as overruling *Lincoln* v. *Superior Court* (1943), 22 Cal.2d 304 [139 P.2d 13], and *Brock* v. *Superior Court* (1931), 119 Cal.App. 5 [5 P.2d 659]. If there be any ground at all for distinguishing between Lincoln and the case at bar it is that in Lincoln we had a more persuasive case for reversal of the order of dismissal than here. In that case, as here, an order to show cause was issued and came on for hearing. There (p. 307 of 22 Cal.2d), "the defendant husband filed a written motion 'to vacate, set aside and quash the order to show cause and affidavit' and declared that he 'objects to the hearing of said order to show cause.' The defendant's written motion specified two grounds: (1) that the superior court was 'without jurisdiction to proceed with the hearing on said order to show cause by reason of the fact that there is another action

[the Virginia suit] pending between the above [p. 308] named plaintiff and defendant covering the identical subject matter'; and (2) that 'the matters to which the defendant . . . is directed to appear and show cause are res *adj*udicata' by virtue of the Virginia proceedings." As to such two grounds of objection to the hearing we frankly and specifically held that "Neither of such grounds raises a jurisdictional point," *thereby recognizing that the trial court erred in granting the defendant's motion to dismiss.* We there held, however, contrary to the view now contended for by petitioner, that the question of error in the ruling was not to be considered in ruling on the petition for mandamus; we confined ourselves to the question, which we then deemed controlling, *as to whether the trial court in truth exercised, or refused to exercise, its jurisdiction.*

In passing on that controlling issue we said: "It is patent in the record that the superior court had jurisdiction of the cause and of the parties. It is likewise patent that the court exercised that jurisdiction by issuing its order directing the defendant to appear and show cause why he should not be required to make the payments and do the things recited in the order, by conducting the hearing on the order, by receiving and considering evidence, and by entertaining and granting a motion to dismiss." Every statement of the above quotation is equally true in relation to the case at bar. Here the petition for the writ alleges that with the evidence (hereinafter epitomized) before it the trial court "refused to proceed with the hearing on the said Order to Show Cause, and made a minute order which reads and provides as follows: 'Motion of attorney for defendant *to dismiss* Order to Show Cause for lack of jurisdiction is granted.'" (Italics added.)

The cogent force of the Lincoln holding in its direct applicability to the order here involved is made still further apparent by the following language in Lincoln (p. 309 of 22 Cal.2d): "The petition herein discloses that in addition to the written motion to quash the order to show cause the defendant . . . made an oral motion to *dismiss* the proceeding and that such motion to dismiss was granted. If the defendant in the trial court had confined himself to an objection to the proceeding therein, on the ground of want of jurisdiction, and if that court had merely sustained such objection and *left the proceeding still pending,* we should have an essentially different case: there would then appear a failure to

exercise jurisdiction. But on the showing made the superior court did not stop there. Upon defendant's application it *dismissed* the proceeding. The effect is the same, so far as this mandamus application is concerned, as though the suit had been dismissed . . . That the trial judge in the case here involved may have *believed* that the Virginia court had exclusive jurisdiction is inconsequential. A mere belief in an erroneous proposition of law cannot oust a court of jurisdiction and does not establish a refusal to act. If the trial court here had *acted* in accordance with such a belief and merely sustained an objection to proceeding with the hearing, we should have a proper factual base, jurisdictionally, for the intervention of mandate. But we are concluded on this phase of the case by the fact that the court, regardless of what its *theory* may have been, in the *action it took* exercised its jurisdiction.''

Here, as previously stated, the court exercised its jurisdiction in the premises by issuing the order to show cause, by conducting a hearing thereon and by making an order completely disposing of such order to show cause. Whether such order is correct or erroneous is, as it was held in Lincoln, not properly before us. But, in view of the argument made on behalf of petitioner, and to demonstrate that the court did exercise jurisdiction and discretion in the premises rather than simply refuse to act, it seems proper to note the evidence on which it acted. The evidence before the court included the affidavit of the plaintiff; it included the order of issuance of the order to show cause and it included the plaintiff's complaint and the defendant's answer thereto. From the sworn allegations in such documents the trial court was amply justified, if not as a matter of law compelled, to find that defendant left California in October, 1946, taking with her the minor child, and that at the time she left California she had the fixed and definite intention to cease to be a resident of California and to establish and maintain her residence permanently outside the boundaries of California. Accordingly the trial court was amply justified, if not as a matter of law compelled, to find that at the time the order to show cause was issued (July 8, 1947, and, if it be material, at the time plaintiff commenced his action, January 2, 1947) the defendant's domicile and that of the child had ceased to be in California.

From the record presented by plaintiff, who is petitioner here, it appears without dispute that plaintiff and defendant separated on June 3, 1946; that plaintiff's complaint (com-

mencing the litigation here involved) was filed on January 2, 1947; "that the defendant Gladys J. Sampsell left the State of California on October 25, 1946, *with the avowed intention of obtaining a Nevada divorce and thereafter marrying William Holt and residing with him at his residence in Salt Lake City.* [Italics added.] Six weeks thereafter, and on December 11, 1946, she sued petitioner in Nevada for a divorce, and served him by publication . . . *On June 7, 1947, the defendant Gladys J. Sampsell carried out her original stated intention* by marrying William Holt in Carson City, Nevada, and removing to Salt Lake City, where she has since resided with him. [Italics added.] On July 8, 1947, petitioner filed an affidavit in support of an order to show cause for a *pendente lite* determination of the minor child's custody, and such order to show cause was issued and made returnable on July 17, 1947, before the respondent Court."

It is to be noted that the affidavit of plaintiff, which is a part of the evidence which was before the trial court when it entered its order of dismissal, specifically avers that "prior to the 25th day of October, 1946, defendant stated to plaintiff that she was going to divorce him and marry one WILLIAM HOLT, who resided in Salt Lake City, Utah, and on the 25th day of October, 1946, said defendant, without the knowledge or consent of plaintiff, left the County of Los Angeles, State of California, where both plaintiff and defendant had resided since their respective childhoods, with the said minor child of plaintiff and defendant, and went to the City of Las Vegas, State of Nevada. That thereafter plaintiff requested that defendant return to the State of California with the said child, but the defendant has at all times failed, neglected, and refused to do so, and instead of returning and as soon as she had lived for six weeks in Las Vegas, Nevada, and on or about the 11th day of December, 1946, defendant filed a divorce action against plaintiff in the District Court of the State of Nevada, in and for the County of Clark. That service by publication in said divorce action was attempted on plaintiff, but that plaintiff did not appear in said action, and plaintiff was never personally served in said action, for the reason that the State of California was the true domicile of the said parties*

*A mere conclusion of the affiant, so far as domicile of the defendant and of the child is concerned, and incompetent to constitute a substantial conflict in the objective facts from which their domicile is to be inferred. (*Johnston* v. *Benton* (1925), 73 Cal.App. 565, 570 [239 P. 60].)

and the place where any divorce litigation should be maintained, and for the further reason that plaintiff did not have the facilities and his employment did not permit his travelling to the State of Nevada to defend and cross-complain in said action. . . . 4. On or about the 7th day of June, 1947, in Carson City, Nevada, the defendant Gladys J. Sampsell married the William Holt whom she stated to affiant that she intended marrying, before going to the State of Nevada to obtain her said divorce, and since said time said William Holt and said defendant have been living together in Salt Lake City, Utah, as man and wife.

''5. That prior to said marriage, defendant continued to maintain a place of temporary abode in Las Vegas, Nevada, and has never had any intention of making the State of Nevada her permanent place of abode. *That the only intention defendant had was to divorce plaintiff in the State of Nevada, and then remove to the City of Salt Lake City, Utah, after marrying William Holt, and reside with him in his residence in said last named city,* and that the said William Holt has at all times maintained and conducted his business in the said City of Salt Lake City, Utah, and has never resided or intended to reside in the State of Nevada. [Italics added.]

''6. That during all of the times herein mentioned since the defendant went to the State of Nevada, she has maintained the minor child of plaintiff and defendant with her, and has refused to permit plaintiff to have any custody of the child whatsoever, or to see the said child, or to permit the child to be returned to the State of California . . .''

From the above quoted evidence it is obvious that the trial court justifiably found that defendant, with the child, had departed from California and had ceased to be domiciled therein long before the disputed order to show cause was issued. Regardless of whether defendant intended to live in Nevada permanently it is clear that she intended to leave California permanently. The trial court so found and thereupon dismissed the order to show cause. That was a proper exercise, not a refusal to exercise, the jurisdiction of the subject matter which it possessed. (*Lincoln* v. *Superior Court* (1943), *supra*, 22 Cal.2d 304, 309, 315.) But even if we could hold that the court erred in dismissing the order to show cause on the facts and theory above stated it is still inescapable that at the worst it erred in the exercise of jurisdiction. That was, precisely, the situation in Lincoln and in Lincoln we held that we would not use mandamus to correct such an error.

It is further to be noted here that it is only the pendente lite order to show cause that has been dismissed. The action still pends. Many times, a trial court in handling domestic relations litigation has occasion to exercise its jurisdiction and its sound discretion in respect to applications for awards of custody of minor children pendente lite by denying such applications and postponing any order as to custody until the case is tried on its merits. In fact, the usual rule is that in the absence of some substantial showing requiring a change for the protection of a child, the courts will leave custody where they find it until trial on the merits is had.

An application for an award of custody of minor children, as an incident to divorce litigation, is, like an application for alimony pendente lite, in effect a proceeding for a separate judgment which may be made independent of, or preceding, or subsequent to, the final judgment. Although a provision for custody of the minor children may be included in either or both the interlocutory and final decrees, the provision for the custody (and support) of the children may be modified from time to time upon proper showing, regardless of finality of the decrees otherwise. The application for award, or for modification, of custody, may be heard and determined upon a record of its own and may be the subject of a direct appeal. The order of dismissal of the order to show cause was a final determination of that proceeding (*Lincoln* v. *Superior Court* (1943), *supra*, 22 Cal.2d 304, 309), subject, of course, to the right of the plaintiff to make a similar new application, upon proper grounds, at any time during the minority of the child (Civ. Code, § 138). It may be said here as was said in the Lincoln case (p. 314), ''[T]he only objects that would be attained by granting the writ . . . would be to require the trial judge (1) to *reverse* his ruling in granting the motion to quash and the motion to dismiss, and (2) to resume the hearing of the order to show cause and dispose of it either differently as to result or on a different ground. In other words, the legal objective sought to be attained by the writ is not to compel the trial court to hear and determine a cause, but rather to compel it to rehear and redetermine and reverse its ruling on a question of law [and in this case, apparently, its findings of facts] in a cause it *has* heard and determined. That it might on such rehearing receive additional evidence, or give different legal effect to the evidence it had received, is beside the point.''

A case which is also squarely in point is *Brock* v. *Superior Court* (1931), *supra*, 119 Cal.App. 5, 6, wherein the following appears: "Petitioner claims that the court has refused to exercise its jursdiction in the matter, but the facts stated in the petition show the contrary. When the order to show cause came before the court the matter was submitted upon a stipulation of facts. Thereupon the court entered an order denying the requested relief, 'on account of this Court not having jurisdiction to award temporary attorney fees, costs, or support on two grounds; that the child is not within the jurisdiction of this Court, also that provisions in Section 137, Civ. Code., in re Attorney's fees, costs and support money do not apply in this case.'

"It thus appears that the court did not deny its jurisdiction to pass upon the application. It did pass upon and determine said application, but refused the requested allowance, because the court was of the opinion that it did not have authority to make such allowance to a child not residing in this state and not present in this state, in an action to compel a father to support his child. If the court erred in this conclusion (which we do not decide), it was only an error made by the court in the exercise of its jurisdiction. It was not a refusal to action upon the merits of the matter presented.

"The petition for writ of mandate is denied."

The petitioner would have us hang the weight of a mandated reversal of the dismissal on the tenuous thread of an assumption, contrary to all the established objective facts and contrary to the trial court's implied finding, that the minor child, notwithstanding the valid award of custody to his mother by the Nevada court and notwithstanding her admittedly permanent residence in Utah, is a "domiciliary" of California and therefore, subject to jurisdiction which, the majority hold, the superior court "refused" to exercise when, after considering the evidence pertinent to its jurisdiction of the res and its practical power to enforce any order it might make, it dismissed the order to show cause. The most that can be claimed for the California court, on any view of the evidence, is a fringe of partial jurisdiction. To compel the trial court to reverse its prior order of dismissal, to resume the hearing, and, presumptively, to award custody of the child or visiting privileges to the plaintiff pending trial on the merits, with only partial and inadequate jurisdiction or power to enforce its order, seems to me to be an abuse of the power of this court and of mandamus procedure. "Complete jurisdiction

includes not only the power to hear and determine, but the power to enforce the determination, as the judgment or decree is the end for which jurisdiction is exercised, and it is only through the judgment and its execution that the power of the court is made efficacious and its jurisdiction complete. To render the jurisdiction of a court complete, it must have jurisdiction over the subject matter, and in actions in personam over the person, or in proceedings in rem over the res or matter in contest.'' (21 C.J.S. 35, § 21, and cases there cited.) In 14 American Jurisprudence 364, section 160, it is said that ''Complete jurisdiction includes not only the power to hear and determine the cause, but also power to enforce the judgment; and courts usually decline to entertain or to attempt to exercise jurisdiction intended to be complete if it fails to confer power to enforce the judgment which may be rendered . . . [pp. 373-374, § 174] A court having jurisdiction to render a judgment or decree has authority and jurisdiction to make such orders and issue such writs as may be necessary and essential to carry the judgment or decree into effect and render it binding and operative . . . [A] court will not adjudicate where it cannot enforce the adjudication . . .'' In the simplest and most concise language the supreme court of Connecticut says (*Bankers' Trust Co.* v. *Greims* (1929), 110 Conn. 36 [147 A. 290, 66 A.L.R. 726, 731]): ''It is a fundamental principle that courts will not adjudicate when they cannot enforce.'' It seems to me that, even if we assume that the trial court could in some practical manner (which has not yet been suggested) enforce an order for custody pending the trial, we should not, under the circumstances here shown, apply mandamus to compel it to reverse the order made. We, of course, do not know what order might be made after trial on the merits.

Here, both the minor child and his mother, with whom he lives in Utah, are outside the territorial boundaries of California and are domiciled outside California. It is true that the mother has ''appeared'' in the present California proceeding by the filing of an answer to the complaint through an attorney. But neither the mother nor the child is physically within the State of California and neither is within reach of the sheriff of a California county. The fact that the court has jurisdiction to render an *in personam* judgment as against the mother does not mean that such judgment can be executed upon res beyond the boundaries of the state. The child is

not a party to the basic litigation, either plaintiff or defendant, nor is he an intervenor, cross-complainant or cross-defendant. By a process of elimination, then, it would seem that his relationship to the case insofar as an order awarding his custody is concerned, most logically, is analogous to that of the *res* the status of which is to be litigated. ''A court has no jurisdiction of rights or actions in rem where the property in controversy lies without the limits of the court's control and its process cannot reach the locus in quo . . .'' (21 C.J.S. 52, § 43.) It is unnecessary and would be improper for us to speculate here as to what could possibly be accomplished. if the mother were physically within reach of California process and had been ordered to bring the child into the state. No such order has been made and neither the child nor the mother is available to the sheriff in California.

Upon the showing made the order of dismissal was within, and constituted an exercise of, the jurisdiction of the court. Contrary to a statement in the majority opinion that ''If we were to hold that the dismissal for lack of jurisdiction based on the facts stated in petitioner's affidavit is a determination on the merits precluding the issuance of mandamus'' some 11 California cases ''would have to be overruled,'' an examination of the cited cases discloses no holding requiring that under circumstances such as are apparent here the writ must issue. There is broad language, somewhat loosely used in some of those cases, but the fact remains that Lincoln and Brock are the only two California cases squarely in point with the case at bar and those two cases, if we are to be consistent, require that the writ be denied.

Perhaps the most serious objection to the majority opinion, from the standpoint of the profession, is that it leaves the law relating to the use of mandamus as a substitute for appeal in such a confused state that no lawyer or judge will be able to differentiate intelligibly between cases where mandamus will lie to correct error in the exercise of jurisdiction and where it will be denied. I think it is clear that no lawyer or judge of a lower court can carefully read Lincoln (22 Cal.2d 304) and Brock (119 Cal.App. 5) and compare the court action and orders there made with the court action and order here made, and find any substantial legal basis or rule for distinguishing the earlier cases from this one. If the majority determine, as they do here, that our former rather strict policy against using mandate as a substitute for appeal is to be so broadly liberalized, it is my view that, for the sake of clarity

of the law with which others must deal, they should frankly acknowledge that their opinion is essentially inconsistent with the earlier ones (Brock, 1931, and Lincoln, 1943) and unequivocally declare that those cases are overruled.

For the several reasons hereinabove elucidated the application for mandate should be denied.

Shenk, J., and Carter, J., concurred.